[No. 44827.   En Banc.   July 13, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN EARL SWEET, *Appellant.*

*John B. Midgley* and *Allen M. Ressler,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

HAMILTON, J.—This is an appeal from a superior court order denying an application for post–conviction relief. The issue raised is whether the State has the burden of demonstrating waiver of the constitutional right to appeal. We

hold that it is the State's burden to affirmatively demonstrate waiver. On these facts the State has not met that burden. We set aside the court's order and reinstate the appeal.

The appellant, Norman Earl Sweet, was convicted by a jury of the crime of the unlawful possession of a controlled substance. At trial and the subsequent sentencing he was represented by a retained attorney. Sweet did not perfect an appeal after judgment and sentence, but later filed an application for post–conviction relief with the Court of Appeals, Division Two, alleging deprivation of the constitutionally guaranteed right to appeal and denial of the effective assistance of counsel.

An evidentiary hearing on the factual matters raised by the application was ordered. The testimony adduced at the hearing established that at the time of Sweet's sentencing, January 16, 1975, he was read the substance of CrR 7.1(b) by the court.[1] Sweet, who had never appealed a criminal conviction, recalled the judge told him that he had a right to appeal and to have counsel appointed for him. He did not recall that the judge indicated he could file a notice of appeal pro se. Sweet testified that after sentencing he spoke with his trial attorney and told him he would like to file an appeal. At the time of sentencing, Sweet was of the belief his attorney would file the notice of appeal. Several days later, however, while he was in the Pierce County jail, Sweet received a notice of withdrawal from the attorney. This notice indicated the attorney would not represent Sweet for purposes of appeal. Sweet, now without funds, testified he did not receive any information from the attorney relative to the procedure for perfecting an appeal.

---

[1] "**(b) Procedure at Time of Sentencing.** The court shall, at the time of sentencing, unless the judgment and sentence are based on a plea of guilty, advise the defendant:

"(1) of his right to appeal;

"(2) that unless a notice of appeal is filed within 30 days after the entry of the judgment or order appealed from, the right of appeal is irrevocably waived;

"(3) that the court clerk will, if requested by defendant appearing without counsel, file a notice of appeal in his behalf; and

After receiving the notice of withdrawal, Sweet, in an apparent effort to preserve his appeal, inquired of a jailer what he might do to secure the services of another attorney. According to his testimony, a jailer told him to contact legal services after his transfer to the Washington Corrections Center in Shelton, which was to take place within a few days. As it turned out, Sweet was not transferred to Shelton in a few days, but remained in the Pierce County jail for over 30 days. By the time the transfer to Shelton took place, the period for filing a notice of appeal had expired.

Sweet's retained trial attorney also testified at the hearing. He could not recall any conversation subsequent to sentencing regarding the appeal. He may have told Sweet he should seek the services of another attorney, because Sweet was unable to pay for past legal services.

In an effort to determine what knowledge Sweet had about his appeal rights other than that imparted by the court, both the prosecutor and the hearing judge asked the trial attorney about the information he had personally conveyed to Sweet. When asked by the prosecutor whether he had advised Sweet how to fill out a notice of appeal on his own behalf, the attorney replied, "No, I did not." When asked by the hearing judge whether he had personally explained to Sweet at any time his rights on appeal, he replied, "I believe I did prior to sentencing, yes, but not after sentencing." The attorney did not recall exactly what he told Sweet. He testified he didn't believe he'd been very specific in discussing the appeal because the trial court judge read appeal rights to Sweet. Finally, he testified that he was of the belief Sweet's appeal was meritorious.

The post–conviction hearing judge entered findings and conclusions of law based upon this evidence. He first found that Sweet was advised of the provisions of CrR 7.1(b),

---

"(4) of his right, if unable to pay the costs thereof, to have counsel appointed and portions of the trial record necessary for review of assigned errors transcribed at public expense for an appeal. These proceedings shall be made a part of the record." CrR 7.1(b).

understood his attorney would not file an appeal, did not direct the attorney to file an appeal, and did not reasonably rely on the advice of the jailer. He therefore concluded the record reflected no basis for excusing Sweet's failure to file a notice of appeal. The application for post–conviction relief was denied, and this appeal followed.

Sweet seeks review of the order denying post–conviction relief. He contends that the hearing judge erroneously charged him with the burden of demonstrating lack of waiver.

■■ Under the federal constitution, as respondent notes, it is permissible to grant the right to appeal on whatever terms a state deems proper. *McKane v. Durston,* 153 U.S. 684, 38 L. Ed. 867, 14 S. Ct. 913 (1894). The respondent therefore suggests we should begin by adopting a rule which requires the defendant to show lack of waiver. We cannot agree with respondent's suggestion. Washington's Const. art. 1, § 22 (amendment 10) grants not a mere privilege but a "right to appeal in all cases". *State v. Schoel,* 54 Wn.2d 388, 341 P.2d 481 (1959). The presence of the right to appeal in our state constitution convinces us it is to be accorded the highest respect by this court. Hence, we decline to dilute the right by application of an analysis which differs in any substantial respect from that which is applicable to other constitutional rights. We have held there exists no presumption in favor of waiver of constitutional rights. *State v. Emmett,* 77 Wn.2d 520, 463 P.2d 609 (1970). This principle applies equally well to the constitutional right of appeal.

We hold there is no presumption in favor of the waiver of the right to appeal. *The State* carries the burden of demonstrating that a convicted defendant has made a voluntary, knowing, and intelligent waiver of the right to appeal.

■ Waiver is the intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938); *State v. Schoel, supra.* The simple reading of CrR 7.1(b) to a defendant may well be insufficient in itself to

give rise to a conclusion of waiver. *Compare State v. Taylor,* 83 Wn.2d 594, 521 P.2d 699 (1974), *and* CrR 4.2 (guilty pleas).[2] Thus, in addition to showing strict compliance with CrR 7.1(b) by reading appeal rights to a defendant, the circumstances must at least reasonably give rise to an inference the defendant understood the import of the court rule and did in fact willingly and intentionally relinquish a known right.

It would seem to us a *conscious, intelligent, and willing* failure to appeal could be shown to constitute waiver. For example, if a convicted individual is clearly advised of the right to appeal and the procedure necessary to vindicate that right in the manner prescribed by CrR 7.1(b), demonstrates understanding, and is under no unfair restraint preventing vindication, failure to act can be said to be waiver—the intentional relinquishment of a known right. *See, e.g., State v. Huston,* 15 Wn. App. 468, 550 P.2d 20 (1976), *review denied,* 87 Wn.2d 1011 (1976), and *State v. Hall,* 18 Wn. App. 844, 573 P.2d 802 (1977). Waiver could most clearly be shown by a demonstration in the record that the trial judge questioned the defendant about his understanding of the appeal procedure and his intentions with regard to an appeal. *See, e.g., Koehn v. Pinnock,* 80 Wn.2d 338, 494 P.2d 987 (1972).

We turn now to a consideration of Sweet's contention that the hearing judge indulged in a presumption in favor of waiver and, in so doing, erroneously shifted the burden of proof. After a careful review of the case, we are constrained to agree with this contention. First, portions of the hearing judge's oral opinion, which we have set out below, reflect an indulgence in a presumption in favor of waiver. It appears the hearing judge felt that on the mere reading of the criminal rule a presumption of waiver arose. The judge then shifted the burden of proof to the defendant and

---

[2]CrR 4.2(d), (e), and (g) provide comprehensive protective requirements which insure that the defendant's rights have been fully protected. It is not therefore unreasonable to impose the burden on the defendant in cases where withdrawal of a guilty plea is sought.

required a "substantial" or "majority" burden be met by him. Under this analysis, the sole testimony that the rule was read justified the finding of waiver. The hearing judge said:

> That the effort in the promulgation of the criminal rules was to fill that deficiency and that when those rules have been followed there is sort of a presumption that the defendant has been properly dealt with and *he's got a substantial burden to overcome* when he contends to the contrary.

The judge then went on to add:

> It would appear to me that rule 7.1(b) supersedes prior rules on this subject. It may be that it wasn't as well drafted as the prior rules but it is there and I think this is the rule we now are required to read to a defendant who has a right of appeal following conviction and *I think the majority burden here on the defendant* is to show that there is a very good reason why he didn't do what the judge told him and didn't understand what the judge told him at the time those rights were read to him.

As we have stated, there is no presumption in favor of waiver of the right to appeal, and the reading of CrR 7.1(b) to a convicted defendant may not in itself give rise to such a presumption. Thus, it was error for the judge to indulge in any presumption of waiver.

The conclusions of law in this case also indicate that the hearing judge indulged in a presumption of waiver. They contain *no* reference to a knowing waiver. On the contrary, the conclusions carry through the erroneous presumption reflected in the judge's oral opinion. Conclusion No. 3 states:

> The findings of fact entered by this court and record of proceedings held in this matter reflect no basis for *excusing* the defendant for his failure to so act.

The oral opinion and conclusions of law raise too high a probability of error for us to assume the hearing judge correctly applied constitutional principles. Since we are able to determine that the decisional process was tainted by the

error of presuming waiver, it is our duty to set aside the order denying post–conviction relief.

▮ Rather than remand this case for further hearings, we have chosen to review the record and determine, without presuming waiver, the merits of Sweet's petition. We do so because we have a complete record and where constitutional rights are in issue, it is incumbent on a reviewing court to make its own independent examination and evaluation of the facts. *State v. Byers,* 85 Wn.2d 783, 539 P.2d 833 (1975); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). After review of the record, we have found this appeal demonstrates a unique set of circumstances which, regardless of error in approaching the issue of waiver, prevented vindication of the right to appeal. Simply stated, the record contains no demonstration of a knowing, conscious waiver.

Sweet had completed his high school education and, at the time of his sentencing, about one semester of college. Although he had some prior contact with the criminal justice system, he had never before appealed a case. At the time when Sweet received the notice of withdrawal of counsel, he anticipated he would be transferred to Shelton in a few days, and would have access to legal services. While it is commonplace for a defendant to be held in a county jail for 30 days prior to transfer, there is no record anyone informed Sweet of this fact.[3] His expectation of transfer was not therefore unreasonable.

Regardless of these facts, a conclusion that an educated defendant, acquainted with the criminal justice system, waived his rights might still be justified were it not that

---

[3]RCW 36.63.255 provides, as follows:

"Any person imprisoned in a county jail pending the appeal of his conviction of a felony and who has not obtained bail bond pending his appeal shall be transferred after thirty days but within forty days from the date judgment was entered against him to a state institution for felons designated by the director of the department of institutions: *Provided,* That when good cause is shown, a superior court judge may order the prisoner detained in the county jail beyond said forty days for an additional period not to exceed ten days."

from the time of sentencing forward Sweet was in a situation which tended to frustrate vindication of his right to appeal. Sweet's disadvantage arose from an unusual set of circumstances. Initially, his retained attorney withdrew without carefully advising him of the availability of an appeal pro se, or of an appeal through Pierce County's Department of Assigned Counsel. In addition, the attorney did not file a notice of appeal in order to protect Sweet's rights. When the attorney withdrew, the Department of Assigned Counsel was evidently appointed, but the records of both the Superior Court and this court contain no indication the appointment was ever made known to Sweet. In short, the representation of Sweet after judgment can be best described as something of a "revolving door" of legal assistance. In passing, we note the ABA Standards Relating to the Prosecution Function and the Defense Function § 8.2, at 289 (Approved Draft, 1971) suggests a far better procedure after judgment. Section 8.2 states:

8.2 Appeal.
(a) After conviction, the lawyer should explain to the defendant the meaning and consequences of the court's judgment and his right of appeal. The lawyer should give the defendant his professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal. He should also explain to the defendant the advantages and disadvantages of an appeal. The decision whether to appeal must be the defendant's own choice.
(b) The lawyer should take whatever steps are necessary to protect the defendant's right of appeal.

*See also* ABA Standards §§ 8.3, 8.4, at 293–305.

The combined effect of Sweet's expectation of transfer to Shelton where legal services were to be available, his lack of knowledge about or contact with the Department of Assigned Counsel, the omission of his retained attorney to advise or assist him prior to withdrawal, and Sweet's lack of understanding about the procedure for appeal lead us to conclude he did not knowingly and willingly relinquish his right to appeal. Accordingly, we reinstate this right.

Since this is a unique case, we have not gone so far as to adopt ABA Standards, section 8.2(a) and (b), *supra,* although we believe that these standards provide excellent guidance for defense counsel faced with the necessity of withdrawing from a case after judgment and sentence. We are confident that the members of the Bar will follow the procedure suggested by the standards.

In light of our view of this case and disposition of the matter, it is unnecessary to consider appellant's claim of ineffective assistance of counsel.

Appellant will be afforded 30 days from the mandate within which to pursue his appeal.

ROSELLINI, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD, J. (dissenting)—I dissent.

I have no quarrel with the majority's recitation of the procedural background of this appeal or with its recitation of evidence adduced at the reference hearing ordered pursuant to CrR 7.7(b) (rescinded July 1976 and superseded, insofar as important here, by RAP 16.11, 16.12). However, I must add appellant's concession, made at the reference hearing, that the sentencing judge informed him of his right to appeal as follows:

> THE COURT: Mr. Sweet, I must advise you at this time that you have the right to appeal the verdict of the Court, the Jury, and the judgment and sentence of the Court. You must file an appeal within 30 days of the entry of this judgment which will be this morning or the order appealed from or the right to appeal is irrevocably waived; that the Court Clerk will upon request and appearing without counsel file a notice of appeal in your behalf and if you are unable to pay the costs thereof, you have a right to have counsel appointed and portions of the trial record necessary for review of assigned errors transcribed at public expense for an appeal. These proceedings shall be made a part of the record. I believe that covers rule 7.1 subsection (b). The Court will be at recess.

Appellant also admitted paying attention to the judge's advice because he was considering the possibility of an appeal.

Based upon evidence presented at the reference hearing, the trial court entered 10 critical unchallenged findings of fact:

### I.
On 16 January 75, the defendant appeared in open court with his attorney, Ronald E. Thompson for sentencing.

### II.
*The defendant was advised of the provisions of CrR 7.1(b), Criminal Rules of Superior Court.*

### III.
The defendant is a high school graduate with some college level credits, and can read and write the English language.

### IV.
*Prior to sentencing* there was some discussion between the defendant and his attorney, Mr. Thompson, with regard to an appeal, but *there was no agreement that an appeal be filed, nor did the defendant direct that Mr. Thompson file an appeal, neither did the defendant direct Mr. Thompson to file an appeal after the sentence was imposed.*

### V.
On 23 January 75, while the defendant was being held in the Pierce County Jail, he received written notice of Mr. Thompson's motion to withdraw as his attorney.

### VI.
*The defendant understood or reasonably should have understood, that Mr. Thompson would take no further action.*

### VII.
From that date until defendant was transported to Shelton, the *defendant remained in the Pierce County jail located in the same building as the Superior Courts and the Clerk's office;* and within one block of the Department of Assigned Counsel, hereinafter referred to as the public defender.

### VIII.
During the period of time referred to in paragraph VII,

the above *defendant made no effort to contact the Court, the Clerk of the Court, or the public defender's office.* Rather, he asked a jailor about appeals and was apparently advised that legal counseling was available within the prison system. .

IX.

During the time referred to in paragraph VII above, the defendant would have obtained upon his request, assistance from the public defender's office, representatives of which make daily visits to the jail.

X.

The defendant had no right to rely and did not reasonably rely on the advice of a jailor.

(Italics mine.)

Since appellant has not assigned error to any finding of fact all must be accepted as the established facts of the case. *State v. Vidor,* 75 Wn.2d 607, 608, 452 P.2d 961 (1969); *State v. Moses,* 70 Wn.2d 282, 285, 422 P.2d 775 (1967); CrR 7.7(h) (rescinded July 1976 and, insofar as important here, superseded by RAP 16.14(b)). Further, all findings of fact are supported by substantial, albeit disputed, evidence. Ordinarily we will not disturb such findings of fact. *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974); *State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974). *See also Rutcosky v. Tracy,* 89 Wn.2d 606, 574 P.2d 382 (1978); *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978).

Nevertheless, when fundamental constitutional rights are in issue we will independently examine the testimony, the findings, and the record to determine whether an alleged constitutional violation has occurred. *State v. Byers,* 85 Wn.2d 783, 786, 539 P.2d 833 (1975); *State v. Smith,* 72 Wn.2d 479, 481, 434 P.2d 5 (1967); *McNear v. Rhay,* 65 Wn.2d 530, 535, 398 P.2d 732 (1965). *See State v. Agee,* 89 Wn.2d 416, 419, 573 P.2d 355 (1977). This independent examination does not require, however, that we virtually ignore the trial court's unchallenged findings as the majority has done. In this respect, the majority gives undue

weight to appellant's allegations and excuses although they were rejected by the trial court or are unsupported by findings of fact. I know of no appellate rule which condones this practice and see no reason for departing from our longstanding procedure.

In our independent examination of appellant's contentions, the record, and the trial court's findings of fact, we must not lose sight of the circumstances actually revealed. For example: (a) appellant does not deny that, after sentencing, he was orally informed of his right to an appeal pursuant to CrR 7.1(b); (b) the findings of fact clearly *establish* that *appellant did not ask his lawyer to appeal;* (c) appellant knew his lawyer had withdrawn and would take no further action; (d) although having ample time to do so, appellant *made no effort to contact* the public defender, the clerk of the court, or the court itself; (e) appellant is not a novice in the criminal arena, having been convicted of second–degree assault in 1970 and having had repeated contact with the criminal justice system; and, (f) appellant has completed high school and has earned some college level credits. Unfortunately, the majority has ignored these factors and merely comments that the trial court's clear compliance with CrR 7.1(b) "may well be insufficient in itself to give rise to a conclusion of waiver . . . [t]he circumstances must at least reasonably give rise to an inference the defendant understood the import of the court rule and did in fact willingly and intentionally relinquish a known right."

Even if I agreed with the majority's approach to CrR 7.1(b), I fear we can devise no rule which will withstand a "hard luck story" if the trial court's careful adherence to CrR 7.1(b) and its attendant findings of fact are deemed insufficient to support a conclusion that appellant waived his right to appeal. Looking at the issue realistically, in light of the findings and the surrounding circumstances, I find that much more than a reasonable inference of waiver is demonstrated. Thus, even under the requirements

imposed by the majority, I would find appellant waived his right to appeal.

I am also concerned the majority has misconstrued the clear purpose of CrR 7.1(b). While CrR 7.1(b) is patterned after Fed. R. Crim. P. 32(a)(2),[4] our rule is more explicit and thus offers defendants greater protection than its federal forerunner. Nevertheless, even though compliance with the federal rule provides prospective appellants with less information, concerning the right to appeal,[5] than does compliance with CrR 7.1(b), the federal courts uniformly reject "hard luck stories" offered in the place of unchallenged findings of fact. The federal courts also interpret Fed. R. Crim. P. 32(a)(2) in a logical and realistic fashion appropriate for interpreting our CrR 7.1(b).

Turning to "waiver" of the right to appeal, I agree the State has the burden of establishing acquiescence in the surrender of such right. Moreover, a finding of "waiver is not to be made lightly." *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1943). But, in the cases involving an alleged "waiver" *after a defendant has been given formal notice of the right to appeal,* "waiver" should be deemed established *once the prosecution has substantiated that the notice was in fact given and the defendant failed to act thereon. See Felder v. United States,* 429 F.2d 534, 535 (2d Cir.), *cert. denied,* 400 U.S. 908 (1970); *United States ex rel. Jefferson v. Fay,* 364 F.2d 15, 17 (2d Cir. 1966). *Thereafter the burden is*

---

[4]*See Washington Proposed Rules of Criminal Procedure,* Comment to rule 7.1 at 118 (1971).

[5]Fed. R. Crim. P. 32(a)(2):

"Notification of Right to Appeal. After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant."

*upon the defendant* to demonstrate that the "waiver" was not made competently or with understanding.

The federal courts have consistently followed this approach to the issue of "waiver" and it is fully in accordance with the rule's purpose of insuring that one convicted of a crime be given timely and adequate notice of his appellate rights. *Hoskins v. United States,* 462 F.2d 271, 274–75 (3d Cir. 1972); *Johnson v. United States,* 453 F.2d 1314, 1315 (8th Cir. 1972). In the federal courts the central issue is whether the notice given is consistent with the spirit and purpose of the federal rule. *See Hoskins v. United States, supra; Johnson v. United States, supra; United States v. Benthien,* 434 F.2d 1031 (1st Cir. 1970).

Since CrR 7.1(b) is more explicit and more protective that its federal counterpart, there is no reason for refusing to adopt a similar construction for our own rule. Further, based on the record and findings herein, I am compelled to conclude that the spirit and purpose of CrR 7.1(b) were fully met by the trial court.

The federal courts also uniformly uphold findings of "waiver" and refuse to overturn or reconsider the trial court's rejection of "excuses" to establish lack of understanding, when findings of fact reject the "excuses" and a record has been made that notice was given. *See Godin v. United States,* 495 F.2d 560 (5th Cir. 1974); *Walters v. Harris,* 460 F.2d 988 (4th Cir. 1972); *Johnson v. United States, supra; Felder v. United States, supra; United States ex rel. Jefferson v. Fay, supra.* There is no reason for this court to adopt a more strained view.

Finally, the majority suggests CrR 7.1(b) is insufficient and that it should be replaced by the ABA Standards Relating to the Prosecution Function and the Defense Function § 8.2, at 289 (Approved Draft, 1971). I do not agree.

Turning again to the historical background of our rule, the reasons for adopting Fed. R. Crim. P. 32(a)(2) and CrR

7.1(b) were similar. *See Washington Proposed Rules of Criminal Procedure, supra* at 118. It was felt that at the time of sentencing the *court* should inform a defendant of his right to appeal in all cases which had gone to trial after a plea of not guilty. The concept that such information would adequately be imparted by a defendant's trial counsel was rejected. A fear was expressed that if trial counsel were required to notify a defendant, situations might arise which would prevent the adequate imparting of necessary information. Some lawyers might not regard their responsibility as extending beyond the imposition of sentence. Moreover, some counsel might find that the fact of custody makes it difficult to give such advice. Finally, it was felt that some indigents might be more likely to have ineffective assistance at that point in the proceedings. Thus, the federal courts, and this court, deemed it advisable that *the trial court* bear responsibility for informing a defendant of his right to appeal in forma pauperis. By placing responsibility upon the *trial court,* instead of *trial counsel,* we sought to insure that defendants would be informed of their rights *and* that a record would be made to establish compliance. 5 Orfield, *Criminal Procedure Under the Federal Rules: Rule 30–Rule 42, see* page 167 re *Report of the Advisory Committee on Criminal Rules,* effective July 1, 1966, *see also* page 193 (1967); *Washington Proposed Rules of Criminal Procedure* 118 (1971); *Hoskins v. United States, supra. See also Johnson v. United States, supra.*

For the reasons stated above, ABA rule section 8.2 is less satisfactory than either Fed. R. Crim. P. 32(a)(2) or CrR 7.1(b). The ABA rule places the duty on the *lawyer* rather than upon the *sentencing judge.* Consequently, there is no provision for making an adequate record when notice is given. The ABA rule is, at best, an invitation to a subsequent "swearing contest" unsupported by an official record of the proceedings. Thus, I cannot accept the majority's suggestion.

298

The trial court should be affirmed.

WRIGHT, C.J., and BRACHTENBACH, J., concur with STAFFORD, J.