[No. 66729-7-I.   Division One.   March 26, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. MAHENDRA SAMI CHETTY, *Appellant*.

*Neil M. Fox* (of *Law Office of Neil Fox PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

*James E. Lobsenz* and *Sheryl Gordon McCloud* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 SCHINDLER, J. — Mahendra Sami Chetty filed a motion under RAP 18.8(b) to extend the time to file a direct appeal of his 2004 conviction of possession of cocaine with the intent to deliver in violation of former RCW 69.50-.401(a)(1)(i) (1998). Chetty contends he is entitled to an extension of the time on the grounds that his attorney provided ineffective assistance of counsel. Chetty asserts that because his attorney did not advise him of the adverse deportation consequences of the conviction and the advantages and disadvantages of filing an appeal, he did not voluntarily, knowingly, or intelligently waive his right to file an appeal. Because the record is inadequate to determine whether we should grant or deny the motion to extend the time to file an appeal, we remand to superior court for a reference hearing.

## FACTS

¶2 Mahendra Sami Chetty was born in Fiji in 1963. In 1975, Chetty and his family moved to the United States and Chetty became a lawful, permanent resident. Chetty married a United States citizen and has three young children.

¶3 In 2003, the State charged Chetty with one count of possession of cocaine with intent to deliver in violation of the Uniform Controlled Substances Act, former RCW 69.50-.401(a)(1)(i). Chetty retained attorney Peter Connick to represent him.

¶4 After the information was filed, a King County prosecuting attorney, a detective from the Seattle Police Depart-

ment (SPD), and Connick negotiated the terms of a cooperation agreement. In exchange for complying with the terms of the cooperation agreement, the State agreed to continue the trial and "[u]pon satisfactory fulfillment of Chetty's obligation" agreed to dismiss the pending charge of possession of cocaine with the intent to deliver.

¶5 The cooperation agreement required Chetty to "complete the following tasks for SPD":

1. Chetty will assist in the investigation and prosecution of three drug dealers in the greater Seattle area.

2. Chetty will make controlled purchases of controlled substances as directed by SPD officers.

3. Chetty will assist in the arrest and prosecution of three drug dealers who are arrested with more than 9 ounces of cocaine (one quarter kilo).

4. Chetty will provide any other assistance required by SPD in order to further their investigations of these three individuals.

¶6 In October 2004, the superior court held a contested hearing on the parties' dispute over the terms of the cooperation agreement. While the court concluded that the terms of the agreement were "not entirely clear," the court ruled that Chetty breached the agreement and the State was entitled to proceed with a trial on stipulated facts. The court convicted Chetty as charged of possession of cocaine with the intent to deliver in violation of former RCW 69.50.401(a)(1)(i).

¶7 At the sentencing hearing on November 3, 2004, the court imposed a low-end sentence of 15 months followed by community custody. The court provided Chetty with the "Notice of Rights on Appeal" and informed Chetty that he had a right to file an appeal of his conviction within 30 days.[1] Chetty did not file an appeal.

---

[1] The "Notice of Rights on Appeal and Certificate of Compliance with CrR 7.2(b)" states, in pertinent part:

¶8 On June 22, 2010, the United States Department of Homeland Security instituted removal proceedings against Chetty under the Immigration and Nationality Act, 8 U.S.C. section 1229a. The notice of removal proceedings states that based on his 2004 conviction of possession of cocaine with the intent to deliver in violation of former RCW 69.50-.401(a)(1)(i), Chetty is subject to removal.

¶9 On February 24, 2011, Chetty filed a motion under RAP 18.8(b) to extend the time to file an appeal of his 2004 conviction. In support, Chetty filed a declaration asserting his attorney knew that he was a "resident alien" but did not advise him about either the immigration consequences of the conviction or the advantages and disadvantages of filing an appeal. Chetty's declaration states, in pertinent part:

> 3. When I was charged with a crime in this case, I ended up hiring Peter Connick to represent me. When we first met, he asked me if I was a citizen, and I told him I was a resident alien. He did not say anything to me about immigration consequences of a conviction for possession with intent to deliver drugs. At another time, when we were talking about the case, because I was worried about being deported, I asked Mr. Connick what I should say if the subject of my immigration status should come up, and he told me that if no one asked me about it, I should not volunteer any information about it.
>
> 4. Around the time that I was sentenced, I asked Mr. Connick whether I should appeal or not. He told me that an appeal would be a waste of time because I would be released from custody within three to six months or so, and that I would be

---

1. You have the right to appeal your conviction if you were found guilty following a trial.

    . . . .

2. You are advised that unless a written notice of appeal is filed within 30 days after the entry of this judgment (today), the right of appeal is irrevocably waived. The original and one (1) copy of the notice of appeal must be filed with, and the filing fee paid to, the Clerk of the Superior Court within 30 days after the entry of this judgment. If you are authorized to proceed at public expense, that order must be filed with the notice of appeal instead of the filing fee.

out of custody before the appeal was resolved. That is the reason I did not appeal.

5. Mr. Connick did not tell me that a conviction for possession with intent to deliver cocaine would be considered to be an aggravated felony, for immigration purposes, that would make me not only deportable and inadmissible to the United States, but also would bar almost any type of immigration relief. While we did discuss whether I should appeal or not, the discussions revolved around only whether the appeal would be resolved before I was released or not. Mr. Connick did not discuss with me the immigration consequences of the conviction in this case when we were talking about whether I should appeal.

¶10 Chetty asserts that because he challenged the meaning of the cooperation agreement and the "State's attempt to terminate the contract," if his attorney had told him that the conviction would make him "automatically deportable," he would have exercised his right to appeal.

6. Because I did not plead guilty in this matter, and challenged the State's attempt to terminate the contract I had with the police, I could have appealed the judge's rulings against me. Had I known that the conviction in this case was an aggravated felony that would make me automatically deportable, without most avenues of relief in the immigration court, I would have exercised my right to appeal. I did not instruct Mr. Connick to appeal only because I did not understand the consequences of a final conviction for possession with intent to deliver cocaine.

¶11 Chetty's sister Kushma Chetty and Connick also filed declarations in support of his motion to extend the time to file an appeal. Kushma states that Connick "never said anything" about the immigration consequences of a conviction. According to Kushma, when Chetty asked Connick "whether he should mention the fact that he was not a citizen of the United States," the attorney's "only response was to ask why he should mention it, and that if he was ever asked in any type of forms in prison about it, he should not say anything and leave the box blank." Kushma also describes another meeting where either she or Chetty

asked about fling an appeal of the conviction. According to Kushma, Connick said that "there was no point to an appeal because my brother would go straight to work release" and did not mention immigration consequences.

¶12 In his declaration, Connick confirms that he did not address the immigration consequences of the conviction. Connick states, in pertinent part:

> I cannot recall many details from this case and do not recall saying anything to Mr. Chetty about the immigration consequences of a conviction. I do not recall talking about appeals as well. I am not sure why Mr. Chetty would not have appealed because this case did not involve a guilty plea. I have no recollection of what happened and why Mr. Chetty did not appeal.

¶13 The State opposed Chetty's motion and we scheduled the matter for oral argument.[2]

## ANALYSIS

¶14 Chetty contends he is entitled to an extension of time to file a direct appeal under RAP 18.8(b) on the grounds that he did not voluntarily, knowingly, and intelligently waive his constitutional right to appeal because his attorney did not advise him about the deportation consequences of the conviction or the advantages and disadvantages of filing an appeal.

¶15 The State argues that Chetty is not entitled to an extension of time because he waived his constitutional right to file an appeal and he cannot establish his attorney provided ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The State also argues that the recent decision of the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), is not

---

[2] We granted the motion filed by the Washington Association of Criminal Defense Lawyers to submit an amicus curiae brief.

retroactive and does not apply to a motion to extend the time to file an appeal under RAP 18.8(b).

*RAP 18.8(b)/Right To Appeal*

¶16 Chetty's motion is governed by RAP 18.8(b) and whether there was a voluntary, knowing, and intelligent waiver of the constitutional right to file an appeal. But our disposition is also informed by whether there was ineffective assistance of counsel and a duty to provide advice on the immigration consequences of the conviction.

¶17 The Washington State Constitution guarantees a criminal defendant the right to appeal. CONST. art. I, § 22 (amend. 10). Article I, section 22 (amend. 10) states, in pertinent part, "In criminal prosecutions the accused shall have . . . the right to appeal in all cases." Under RAP 5.2(a), a defendant must file a notice of appeal within 30 days of the entry of the judgment and sentence.[3] RAP 18.8(a) allows the appellate court to "enlarge . . . the time within which an act must be done in a particular case in order to serve the ends of justice." RAP 18.8(b) states:

> **Restriction on Extension of Time.** The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal, a notice for discretionary review, a motion for discretionary review of a decision of the Court of Appeals, a petition for review, or a motion for reconsideration. The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section. The motion to extend time is determined by the appellate court to which the untimely notice, motion or petition is directed.

Despite the restrictive language used in RAP 18.8(b), our Supreme Court held that the decision to grant an extension

---

[3] RAP 5.2(a) states:

**Notice of Appeal.** Except as provided in rules 3.2(e) and 5.2(d) and (f), a notice of appeal must be filed in the trial court within the longer of (1) 30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed, or (2) the time provided in section (e).

of the time to file an appeal must be balanced against the constitutional right to appeal. *State v. Kells*, 134 Wn.2d 309, 314, 313, 949 P.2d 818 (1998).

> Despite this strong language, this court made clear in *State v. Sweet*, 90 Wn.2d 282, 581 P.2d 579 (1978) that the strict application of filing deadlines must be balanced against a defendant's state constitutional right to appeal.

*Kells*, 134 Wn.2d at 314.

¶18 In *Sweet*, our Supreme Court held that the state constitutional right to appeal "is to be accorded the highest respect by this court. . . . [W]e decline to dilute the right by application of an analysis which differs in any substantial respect from that which is applicable to other constitutional rights." *Sweet*, 90 Wn.2d at 286. Because "there is no presumption in favor of the waiver of the right to appeal," the State must carry the burden of showing that the decision to waive the right of appeal was a voluntary, knowing, and intelligent waiver. *Sweet*, 90 Wn.2d at 286.

¶19 In addition to showing compliance with CrR 7.2(b), the court in *Sweet* states that the circumstances must at least "reasonably give rise to an inference the defendant understood the import of the court rule and did in fact willingly and intentionally relinquish a known right." *Sweet*, 90 Wn.2d at 287.

> It would seem to us a *conscious, intelligent, and willing* failure to appeal could be shown to constitute waiver. For example, if a convicted individual is clearly advised of the right to appeal and the procedure necessary to vindicate that right in the manner prescribed by [former] CrR 7.1(b) [(1973)], demonstrates understanding, and is under no unfair restraint preventing vindication, failure to act can be said to be waiver—the intentional relinquishment of a known right.

*Sweet*, 90 Wn.2d at 287.[4]

¶20 The State claims that it carried its burden of establishing waiver because Chetty was informed that he had the

---

[4] CrR 7.1(b) was renumbered as CrR 7.2(b) in 1984.

right to appeal within 30 days of the sentence. Chetty does not dispute that he was so informed but claims that he did not knowingly or intelligently waive his right to appeal because his attorney was ineffective for failing to advise him of the deportation consequences of the conviction or the advantages and disadvantages of filing an appeal.[5]

## Waiver/Assistance of Counsel

¶21 In *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), the Court held that the Sixth Amendment right to counsel was a fundamental and essential due process right. In *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), the Court held that the Fourteenth Amendment guarantees a criminal defendant the right to counsel in the first appeal as of right. And in *Evitts v. Lucey*, 469 U.S. 387, 396-97, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985), the Court held that a defendant is entitled to effective assistance of counsel in an "appeal as of right."

¶22 Washington has adopted the two-prong test set forth in *Strickland* in determining whether counsel was ineffective. *State v. Cienfuegos*, 144 Wn.2d 222, 226-27, 25 P.3d 1011 (2001). Whether an attorney provided effective assistance of counsel is a fact-specific inquiry. *Strickland*, 466 U.S. at 688-89. We strongly presume that counsel's assistance was effective. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To overcome that presumption, Chetty must demonstrate both deficient performance and resulting prejudice. *McFarland*, 127 Wn.2d at 334-35; *Strickland*, 466 U.S. at 687. The defendant carries the burden of establishing ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011).

¶23 The United States Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985

---

[5] The State also asserts that because Chetty addresses matters outside the record, he must file a personal restraint petition rather than a motion to extend the time to file an appeal under RAP 18.8(b). We disagree. RAP 17.4(f) expressly allows a party to file "affidavits and other papers" in support of a motion.

(2000), rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Rather, in determining whether an attorney provided ineffective assistance of counsel by failing to consult, the court must consider the totality of the circumstances and "take into account all the information counsel knew or should have known." *Roe*, 528 U.S. at 480.

¶24 The Court in *Roe* describes the constitutional duty to consult where counsel has reason to believe either "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. The failure to consult under these circumstances constitutes deficient performance and, although prejudice is not presumed, it can be established by presenting evidence that had counsel consulted, defendant would have appealed. *Roe*, 528 U.S. at 484, 486.

¶25 The Court in *Roe* defines "consult" to "convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe*, 528 U.S. at 478. The "proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. The Court states that the " '[p]revailing norms of practice as reflected in American Bar Association [(ABA)] standards and the like . . . are only guides [to determining what is reasonable].' " *Roe*, 528 U.S. at 479 (first and third alterations in original) (quoting *Strickland*, 466 U.S. at 688).

¶26 Likewise, in addressing the responsibility of defense counsel to explain the right to appeal, our Supreme Court in *Sweet* also cites to the ABA *Standards Relating to the Prosecution Function and the Defense Function*.

> "(a) After conviction, the lawyer should explain to the defendant *the meaning and consequences of the court's judgment* and his right of appeal. The lawyer should give the defendant his

professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal. He should also *explain to the defendant the advantages and disadvantages of an appeal*. The decision whether to appeal must be the defendant's own choice.

"(b) The lawyer should take whatever steps are necessary to protect the defendant's right of appeal."

*Sweet*, 90 Wn.2d at 290[6] (quoting PROJECT ON STANDARDS FOR CRIMINAL JUSTICE, ABA, STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION: APPROVED DRAFT § 8.2, at 289 (1971)). Although the *Sweet* court found it unnecessary to adopt these standards, it expressed confidence "that the members of the Bar will follow the procedure suggested by the standards." *Sweet*, 90 Wn.2d at 291.

¶27 In the present case, trial counsel's alleged failure to adequately advise Chetty regarding his right to appeal is central to his motion for an extension of time. In particular, Chetty claims counsel had a duty to advise him that his conviction subjected him to automatic deportation, and that counsel breached that duty. Chetty relies heavily on *Padilla*.

¶28 In *Padilla*, the Court held that an attorney has an obligation under the Sixth Amendment to advise a defendant regarding deportation consequences of entering into a guilty plea. *Padilla*, 559 U.S. 356. The Court emphasized the unique nature of deportation and the importance of advising defendants about the deportation consequences for a criminal charge.

[C]hanges to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

---

[6] (Emphasis added.)

. . . The severity of deportation—"the equivalent of banishment or exile," *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391, 68 S. Ct. 10, 92 L. Ed. 17 (1947)—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.

*Padilla*, 559 U.S. at 364, 373.[7]

¶29 As our Supreme Court states in *State v. Sandoval*, 171 Wn.2d 163, 170, 249 P.3d 1015 (2011), the Court in *Padilla* rejected the "limited conception" that the Sixth Amendment right to effective assistance of counsel did not include advising a defendant about the immigration consequences of a criminal conviction.

¶30 The State asserts that Chetty cannot show that his attorney provided ineffective assistance of counsel by failing to advise him of the immigration consequences related to his right to file an appeal in 2004 because the decision in *Padilla* is not retroactive.[8] However, here, the question is not whether *Padilla* is retroactive but, rather, whether the professional norms in 2004 required defense counsel to

---

[7] (Footnote omitted.)

[8] The Circuit courts are split on whether *Padilla* applies retroactively to a collateral attack of a guilty plea. *Compare United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011) (holding that because *Padilla* "followed directly from *Strickland* and long-established professional norms, it is an 'old rule' for *Teague*[ *v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)] purposes and is retroactively applicable on collateral review"), *with United States v. Chang Hong*, 671 F.3d 1147, 1159 (2011) (holding *Padilla* sets forth a "new rule" that does not apply to cases on collateral review), *and Chaidez v. United States*, 655 F.3d 684, 686 (7th Cir. 2011) (same). The Court treats the decision in *Padilla* as applying retroactively to ineffective assistance of counsel claims under *Strickland*.

We have given serious consideration to the concerns that the Solicitor General, respondent, and *amici* have stressed regarding the importance of protecting the finality of convictions obtained through guilty pleas. We confronted a similar "floodgates" concern in *Hill*[ *v. Lockhart*, 474 U.S. 52,] 58, 106 S. Ct. 366[, 88 L. Ed. 2d 203 (1985),] but nevertheless applied *Strickland* to a claim that counsel had failed to advise the client regarding his parole eligibility before he pleaded guilty.

. . . There is no reason to doubt that lower courts—now quite experienced with applying *Strickland*—can effectively and efficiently use its framework to separate specious claims from those with substantial merit.

*Padilla*, 559 U.S. at 371-72 (footnote omitted).

advise Chetty about the deportation consequences of the conviction and the advantages and disadvantages of filing an appeal.

¶31 We note that the *Padilla* Court emphasized that for "at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Padilla*, 559 U.S. at 372. The Court also defined the scope of the duty to advise a noncitizen client about immigration consequences as follows:

> When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Padilla*, 559 U.S. at 369.[9]

¶32 To the extent *Padilla* helps define the scope of Chetty's counsel's duties in 2004, including the duty to advise Chetty of the deportation consequences of the conviction and the advantages and disadvantages of filing an appeal, it may be significant in deciding Chetty's motion. As previously stated, the effectiveness of counsel is a circumstance that bears on the validity of a defendant's waiver of the right to appeal and, in turn, on this court's ultimate determination whether to extend the time to file a notice of appeal under RAP 18.8(b). *See Evitts*, 469 U.S. at 400 (a state may not extinguish a defendant's right to an appeal "because another right of the appellant—the right to effective assistance of counsel—has been violated").

¶33 Ultimately, however, the effectiveness of counsel and the validity of any waiver of the right to appeal are highly fact-specific inquiries that depend on an assessment of the particular facts and circumstances of each case. Accord-

---

[9] (Footnote omitted.)

ingly, we remand to King County Superior Court for an evidentiary hearing. The superior court shall enter findings addressing whether trial counsel's performance was constitutionally deficient and whether Chetty waived his right to appeal. Chetty has the burden of establishing ineffective assistance of counsel. The State must then carry its burden of establishing waiver. The hearing shall be held within 90 days of the date this opinion is filed unless the superior court determines that additional time is needed to prepare for the hearing. In that event, the superior court may grant the parties additional time, provided the court or the parties advise this court of any delay and the reasons. Following the hearing, counsel shall promptly forward to this court copies of the written findings and conclusions together with any and all transcripts of the hearing. This court will then determine whether or not Chetty's motion for an extension of time to file a notice of appeal should be granted.

¶34 Remanded for proceedings consistent with this opinion.

DWYER, C.J., and SPEARMAN, J., concur.