THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 66729-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| MAHENDRA SAMI CHETTY, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 24, 2014 |

SCHINDLER, J. — In February 2011, Mahendra Sami Chetty filed a motion under

RAP 18.8(b) to extend the time to file a direct appeal of his 2004 conviction for

possession of cocaine with intent to deliver. Chetty asserted he was denied effective

assistance when his trial attorney failed to advise him of the adverse immigration

consequences of the conviction and the advantages and disadvantages of filing an

appeal. We remanded to King County Superior Court for an evidentiary hearing to

determine whether Chetty's trial counsel provided ineffective assistance and whether

Chetty waived his right to appeal.[1] After conducting an evidentiary hearing, the court

entered detailed findings.[2] On the record before us, we conclude Chetty met the burden

of showing ineffective assistance of counsel and the State failed to demonstrate that

Chetty knowingly, intelligently, and voluntarily waived his state constitutional right to

---

[1] State v. Chetty, 167 Wn. App. 432, 444-45, 272 P.3d 918 (2012).

[2] Both parties filed a notice of appeal from the findings of fact and the court's decision. Because the court's decision is not a final order or judgment, it is not appealable as of right. See RAP 2.2.

appeal.[3] We therefore grant his motion to extend the time to file a notice of appeal.

The procedural history is set forth in detail in State v. Chetty, 167 Wn. App. 432, 272 P.3d 918 (2012). In 2003, the State charged Chetty with possession of cocaine with intent to deliver in violation of former RCW 69.50.401(a)(1)(i) (1998). After Chetty retained attorney Peter Connick in March 2004, Connick negotiated a cooperation agreement with the Seattle Police Department that provided for eventual dismissal of the pending charge. The parties later disputed whether Chetty complied with the terms of the agreement. The trial court found that Chetty breached the terms of the cooperation agreement and found Chetty guilty as charged of possession of cocaine with intent to deliver. Chetty did not appeal the 2004 conviction.

After the United States Department of Homeland Security instituted removal proceedings, Chetty filed a motion in February 2011 to extend the time to file a notice of appeal. Chetty asserted that Connick did not advise him of the adverse immigration consequences of his conviction or discuss the advantages and disadvantages of an appeal. Chetty claimed that because Connick did not provide effective assistance of counsel, he did not waive his right to appeal the 2004 conviction.

We remanded to superior court for an evidentiary hearing to determine whether trial counsel's performance was constitutionally deficient and whether Chetty knowingly, intelligently, and voluntarily waived his right to appeal. Chetty, 167 Wn. App. at 444-45. Criminal defense attorneys Howard Phillips, David Gehrke, and Peter Connick; Chetty; Chetty's sister; and Jay Stansell, an expert immigration attorney, testified at the evidentiary hearing. The testimony at the hearing and the findings of fact support the following summary.

_____

[3] CONST. art. 1, § 22 (amend. 10).

Following his arrest in May 2003, Chetty retained Howard Phillips. Phillips contacted the Seattle Police Department to suggest a cooperation agreement. Phillips' practice at the time was not to provide any information about immigration consequences unless he first consulted with an immigration expert about the client's case. Phillips could recall few specific details about his representation of Chetty. But he did not believe that he ever discussed immigration issues with Chetty. Phillips did not routinely discuss appellate rights with clients during the pretrial stage. His practice was to "file an appeal if a person has a valid reason to have their appeal filed."

David Gehrke represented Chetty from November 2003 until March 2004. Gehrke was aware of Chetty's immigration concerns and pursued "an immigration safe resolution" in negotiations with the prosecutor's office. Gehrke's practice at the time was to advise clients with potential immigration issues to contact specific attorneys who specialized in immigration law. Gehrke did not advise Chetty about his appellate rights or how a conviction would affect his immigration status.

Peter Connick represented Chetty from March 2004 through sentencing in November 2004. Connick never provided advice about the specific immigration consequences of a conviction. If he recognized a potential immigration issue, he would generally refer a client to an immigration attorney. Connick believed that this practice was common among local criminal defense attorneys at the time. Connick acknowledged that Chetty had expressed concerns about potential immigration issues, including deportation. Connick understood that because of the potential immigration issues, Chetty would not consider pleading guilty. Connick did not advise Chetty of the specific consequences of his conviction and did not refer him to an immigration

3

attorney.

Connick's general practice regarding an appeal was to answer any questions his clients asked when they were advised of the right to appeal at sentencing. Connick recalled that he discussed with Chetty several potential issues for an appeal before the trial court ruled on whether Chetty complied with the terms of the cooperation agreement, and prior to sentencing. "Connick believed that there were potentially meritorious claims that could have been the subject of appeal." But Connick never discussed the advantages and disadvantages of an appeal with Chetty.

Immigration law expert Jay Stansell has practiced immigration law since 1990. Stansell testified that the prevailing professional norms in 2003-2004 imposed a duty on criminal defense attorneys "to seek out, discover, and advise a client concerning immigration consequences flowing from a conviction." Stansell asserted that at the time of Chetty's prosecution, a conviction for possession of cocaine with intent to deliver would be an "aggravated felony" under federal law. Stansell testified the determination that the conviction would result in almost certain deportation was "one of the simplest most elementary questions that any criminal defense attorney should know the answer to." Stansell believed that an attorney's decision to refer a client facing such a charge to an immigration lawyer reflected deficient knowledge and understanding.

Stansell also testified that an attorney's failure to file a notice of appeal when a client faced deportation fell below prevailing professional standards. Stansell noted that the appellate attorney could always withdraw if no arguable basis for an appeal developed. Based on Stansell's testimony, the court found that at the time of Connick's representation, a criminal defense attorney "should have possessed a full working

4

knowledge of [the] immigration consequences" of a charge of possession of cocaine with intent to deliver.

The court rejected as not credible Chetty's testimony that he did not know what an appeal was and that Connick had advised him not to appeal because it would be a waste of time. The court found that Chetty knew that "an appeal meant review by a higher court," but that Connick did not discuss "in any detail" the advantages and disadvantages of an appeal. Chetty acknowledged that Gehrke told him he needed to find "someone in immigration," but claimed he did not follow up on that advice because Gehrke did not provide him with a specific reference. The court found that although Chetty "knew there were immigration consequences of a conviction," he "was not informed that his conviction would definitely result in deportation." The court's findings state, in pertinent part:

> Following sentencing, defendant was informed by the court that he had the right to appeal. Defendant understood that an appeal meant review by a higher court. Defendant did not understand the legal nuances of an appeal. Defendant understood that he had thirty days to file an appeal. Mr. Connick did not discuss with defendant, in any detail, the advantages and disadvantages of an appeal. Defendant did not file a notice of appeal within thirty days.

Following the evidentiary hearing, the trial court transmitted its finding of fact, and the parties submitted supplemental briefs.

Generally, this court will extend the time to file a notice of appeal "only in extraordinary circumstances and to prevent a gross miscarriage of justice." RAP 18.8(b). But in a criminal case, we must balance strict application of that filing deadline with the defendant's state constitutional right to an appeal. State v. Kells, 134 Wn.2d 309, 314, 949 P.2d 818 (1998); see CONST. art. 1, § 22 (amend. 10). The State bears

the burden of showing that the decision to waive the constitutional right to appeal was knowing, intelligent, and voluntary. State v. Sweet, 90 Wn.2d 282, 286, 581 P.2d 579 (1978). Consequently, the State must demonstrate that "a defendant understood his right to appeal and consciously gave up that right before a notice of appeal may be dismissed as untimely." Kells, 134 Wn.2d at 314.

As we previously held, "the effectiveness of counsel is a circumstance that bears on the validity of a defendant's waiver of the right to appeal and, in turn, on this court's ultimate determination whether to extend the time to file a notice of appeal under RAP 18.8(b)." Chetty, 167 Wn. App. at 444. Well before Chetty's prosecution in 2003, the United States Supreme Court addressed claims of ineffective assistance of counsel based on the failure to consult with the defendant about filing an appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

In Roe, the court rejected a bright-line rule requiring counsel to always consult with the defendant regarding an appeal. Roe, 528 U.S. at 478. Instead, the court adopted the framework of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for analyzing when defense counsel's failure to file a notice of appeal constitutes ineffective assistance. Roe, 528 U.S. at 478.

In situations where the defendant has not clearly conveyed his or her desire to appeal, counsel's failure to consult is constitutionally deficient

> when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Roe, 528 U.S. at 480; Chetty, 167 Wn. App. at 441. To establish prejudice, the defendant must "demonstrate that, but for counsel's deficient conduct, he would have

appealed." Roe, 528 U.S. at 486. In assessing counsel's performance, courts consider "all the information counsel knew or should have known." Roe, 528 U.S. at 480.

Counsel's obligation, once it arises, is not satisfied by a cursory reference to the right to an appeal. Rather, the duty to consult in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe, 528 U.S. at 478. As we also noted in Chetty, our Supreme Court has expressed its expectation that attorneys will follow similar procedures outlined in the American Bar Association's Standards:

> "8.2 Appeal.
> "(a) After conviction, the lawyer should explain to the defendant the meaning and consequences of the court's judgment and his right of appeal. The lawyer should give the defendant his professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal. He should also explain to the defendant the advantages and disadvantages of an appeal. The decision whether to appeal must be the defendant's own choice."

Sweet, 90 Wn.2d at 290 (quoting AM. BAR ASS'N, STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION Defense Function std. 8.2 (1971)); Chetty, 167 Wn. App. at 441-42.

The testimony at the evidentiary hearing supports the finding that Chetty did not know his conviction would almost certainly result in deportation. Connick acknowledged that Chetty had repeatedly expressed concerns about the immigration consequences of a conviction. And even through sentencing, Connick continued to believe that there were meritorious grounds for an appeal. But Connick neither attempted to ascertain whether Chetty wanted to appeal nor advised him in a meaningful way about the advantages and disadvantages of filing an appeal.

Given the virtual certainty of deportation following Chetty's conviction and the presence of nonfrivolous issues for appeal, the record clearly establishes that a rational defendant would have wanted to appeal. See also Roe, 528 U.S. at 480 (whether conviction follows trial or guilty plea is a "highly relevant factor"). Trial counsel's failure to consult with Chetty about the advantages and disadvantages of filing an appeal constituted deficient performance.

Chetty's repeatedly expressed concerns about immigration consequences, the deportation consequences of the conviction, and the presence of nonfrivolous issues for appeal also support a reasonable inference that but for counsel's failure to consult, Chetty would have filed an appeal. On the record before us, Chetty demonstrated both counsel's deficient performance and resulting prejudice. See Roe, 528 U.S. at 484; Chetty, 167 Wn. App. at 441.

The State claims the trial court's findings improperly turn the presumption of defense counsel's competence on its head by relying on the absence of evidence to establish deficient performance. See Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) ("the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance' "[4] (quoting Strickland, 466 U.S. at 689)). But unlike Burt, here, the determination of deficient performance is not based on the absence of evidence in the record.

In his original declaration, Connick recalled very little about his representation of Chetty. Chetty, 167 Wn. App. at 437. However, by the time of the evidentiary hearing,

---

[4] Alteration in original.

8

Connick had reviewed parts of his file and other materials. Connick was able to testify in some detail about his general practice at the time and specifically about his representation of Chetty. Connick acknowledged that despite his understanding of Chetty's immigration concerns and his belief that there were nonfrivolous arguments supporting an appeal, his failure to consult with Chetty after the conviction was completely consistent with his general practice at the time. Substantial evidence supports the relevant findings.

The State also maintains Chetty failed to demonstrate any prejudice resulting from defense counsel's failure to consult about an appeal. The State argues that because Chetty knew he had the right to file an appeal, was concerned about immigration consequences, and knew that an appeal meant review by a higher court, he understood all the critical factors in favor of filing an appeal. The State asserts Chetty's decision not to file an appeal under these circumstances demonstrates a valid waiver.

But the State fails to address the full effect of defense counsel's obligation to consult with Chetty about an appeal.[5] Chetty understood he had a right to an appeal and an appeal meant review by another court. But we must assess that knowledge in the context of Chetty's lack of a full understanding about the likelihood of deportation, and counsel's failure to advise him of the specific consequences of the conviction. At oral argument, the deputy prosecutor identified several possible reasons why a defendant in Chetty's position would not have filed an appeal. The very existence of such countervailing reasons, however, underscores the potential significance of defense

---

[5] Accordingly, the State's reliance on cases focusing primarily on the defendant's failure to file an appeal despite knowledge of the existence of a right to an appeal is misplaced. See, e.g., State v. Devin, 158 Wn.2d 157, 166-67, 142 P.3d 599 (2006).

counsel's postconviction obligation to discuss the advantages and disadvantages of filing an appeal as outlined in Roe.

Our ultimate inquiry focuses not only on Chetty's knowledge of the existence of a right to an appeal, but also on the effect of counsel's alleged deficient performance. See Chetty, 167 Wn. App. at 444-45. In order to satisfy its burden of establishing a valid waiver, the State must demonstrate both that Chetty understood the right to an appeal and that he "did in fact willingly and intentionally relinquish a known right." Sweet, 90 Wn.2d at 287.

When viewed in light of Chetty's incomplete understanding of the immigration consequences of his conviction, the effect of an appeal on those consequences, and counsel's failure to ascertain Chetty's desires about an appeal or discuss the advantages and disadvantages of filing an appeal, we cannot say that Chetty's failure to file an appeal constituted a knowing, intelligent, and voluntary relinquishment of that constitutional right. The State has therefore failed to sustain its burden of demonstrating a valid waiver.

We grant Chetty's motion to extend the time to file his notice of appeal.

WE CONCUR: