IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Petition for Relief from Personal Restraint of: | ) ) ) | No. 30154-1-III (consolidated with No. 30775-1-III) |
| PETRONILO S. BARAJAS, | ) ) | |
| Petitioner. | ) ) ) | |
| _____ | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | |
| PETRONILO S. BARAJAS, | ) ) | |
| Appellant. | ) ) ) | |

FEARING, J. — Petronilo S. Barajas, a citizen of Mexico with legal permanent residence in the United States, seeks relief by direct appeal and personal restraint petition (PRP) for his 2006 Adams County convictions upon plea of guilty to manufacturing marijuana and animal fighting. Barajas did not seek review of the judgment and sentence until February 2011, when he filed a motion to vacate his guilty plea in superior court. He alleged under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), that his counsel rendered ineffective assistance during plea proceedings by failing

to advise him that his manufacturing marijuana conviction subjected him to mandatory permanent deportation. The superior court found the motion time barred and transferred it to this court for consideration as a PRP. CrR 7.8(c)(2). In April 2012, while the PRP was pending, Barajas filed a notice of appeal from the 2006 judgment and sentence, with an accompanying motion for extension of time to file the appeal. Our commissioner granted a motion by Barajas to consolidate the appeal and PRP, and referred the court's own motion to dismiss the appeal as untimely to the panel.

Because Barajas was misinformed during plea proceedings that he had no right to appeal from his judgment and sentence, we grant his motion for extension of time to file the appeal and deny the court's motion to dismiss the appeal as untimely. We also vacate Barajas' guilty plea and convictions, and remand to the superior court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Petronilo Barajas is a citizen of Mexico who obtained legal permanent residence in Washington State in 1989. On June 28, 2006, he was charged in Adams County with one count each of manufacturing marijuana and animal fighting. A police probable cause affidavit states that Barajas admitted to police that he personally planted and cultivated some 400 marijuana plants in a cornfield near his residence. He said he intended to sell the end product.

2

Barajas entered a guilty plea to the crimes on August 7, 2006. In his signed statement of defendant on plea of guilty, he acknowledged waiving constitutional rights incident to a trial, and "[t]he right to appeal a finding of guilt after a trial." Clerk's Papers (CP) at 4-5.

Paragraph 6(i) of the guilty plea statement provided:

If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from . . . the United States, or denial of naturalization pursuant to the laws of the United States.

CP at 7.

Paragraph 12 of the guilty plea statement provided:

My lawyer has explained to me, and we have fully discussed, all of the above paragraphs . . . . I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

CP at 10.

At the joint plea and sentencing hearing, the court asked Petronilo Barajas in reference to his signed guilty plea statement, "And you understand by pleading guilty, you're giving up your right to trial and your right to appeal." Barajas answered, "Yes." Report of Proceedings at 4.

Consistent with the signed guilty plea statement, the court found Barajas' plea knowing, intelligent, and voluntary; that he understood the nature of the charges and the

3

consequences of the plea; and that it was supported by factual basis. The court followed the parties' joint recommendation and imposed concurrent four-month jail sentences for each crime. The court gave Barajas no advice of appeal rights during the plea and sentencing hearing nor does the judgment and sentence mention appeal rights.

Petronilo Barajas served his four-month sentence, paid the legal financial obligations, and then believed his case was completed. He declares that he was unaware he could be deported until January 18, 2011, when he was arrested with several others during a vehicle stop.

The Department of Homeland Security served Petronilo Barajas with a notice to appear in Immigration Court on January 21, 2011. The notice charged that he was removable from the United States on two grounds under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101: (1) conviction for an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and (2) conviction relating to a controlled substance violation pursuant to 8 U.S.C. § 1227(a)(2)(B)(i). The immigration judge found that Barajas' marijuana manufacturing crime was an aggravated felony and ordered him permanently deported. The deportation proceedings are on hold pending disposition of this case.

Petronilo Barajas had not filed a direct appeal or sought any form of collateral review of his 2006 convictions until February 16, 2011, when he filed a CrR 7.8 motion in superior court to vacate his guilty plea. Relying on *Padilla v. Kentucky*, which holds

4

that an attorney has an obligation under the Sixth Amendment to the United States Constitution to advise a defendant regarding deportation consequences of entering into a guilty plea, Barajas alleged his counsel rendered ineffective assistance by not advising him that manufacturing marijuana is an aggravated felony that subjects him to mandatory deportation under the INA provisions in 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a controlled substance is an aggravated felony). Barajas contended *Padilla* should be applied retroactively to his motion, or, the one-year collateral attack period in RCW 10.73.090(1) should be equitably tolled. The superior court found the motion time barred and transferred it to this court for consideration as a PRP. CrR 7.8(c)(2).

On April 13, 2012, Petronilo Barajas filed a notice of appeal from the 2006 judgment and sentence, with an accompanying motion and affidavit for late filing of direct appeal under RAP 18.8(b). He moved to consolidate the pending PRP with the appeal. The court brought its own motion to dismiss the appeal as untimely filed under RAP 5.2. Our commissioner granted the motion to consolidate, but referred the court's motion to dismiss the appeal to the panel.

## ANALYSIS

*Timeliness of Appeal.* We first consider whether to grant Petronilo Barajas'

5

motion for extension of time to file his direct appeal under RAP 18.8(b), or, conversely, to grant the court's own motion to dismiss the appeal as untimely under RAP 5.2.

The Washington State Constitution guarantees a criminal defendant the right to an appeal. CONST. art. I, § 22 declares, "In criminal prosecutions the accused shall have . . . the right to appeal in all cases." CrR 7.2(b)(1) and (3) require the trial court, immediately after sentencing, to advise a defendant of the right to appeal the conviction within 30 days after entry of the judgment. RAP 5.2(a) requires a defendant to file a notice of appeal within 30 days of the entry of the judgment and sentence.

RAP 18.8(a) allows the appellate court to "enlarge . . . the time within which an act must be done in a particular case in order to serve the ends of justice." But RAP 18.8(b) cautions:

> The appellate court will only in extraordinary circumstances and to
> prevent a gross miscarriage of justice extend the time within which a
> party must file a notice of appeal . . . . The appellate court will ordinarily
> hold that the desirability of finality of decisions outweighs the privilege
> of a litigant to obtain an extension of time under this section. The motion
> to extend time is determined by the appellate court to which the untimely
> notice, motion or petition is directed.

Despite the restrictive language in RAP 18.8(b), the strict application of filing deadlines must be balanced against a defendant's state constitutional right to appeal. *State v. Kells*, 134 Wn.2d 309, 314, 949 P.2d 818 (1998) (citing *State v. Sweet*, 90 Wn.2d 282, 287, 581 P.2d 579 (1978)). *Sweet* explains that there is no presumption of waiver of

6

any constitutional right, and thus the State has the burden of showing that the defendant understood his right to appeal and made a knowing, voluntary, and intelligent waiver of that right before a notice of appeal may be dismissed as untimely. *Sweet*, 90 Wn.2d at 287; *see Kells*, 134 Wn.2d at 313 (criminal appeal may not be dismissed as untimely unless the State shows defendant voluntarily, knowingly, and intelligently abandoned his appeal); *see also State v. Tomal*, 133 Wn.2d 985, 989, 948 P.2d 833 (1997) (same). Waiver is the intentional relinquishment or abandonment of a known right or privilege. *Sweet*, 90 Wn.2d at 286 (citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 2d 1461 (1938)).

Petronilo Barajas contends, in view of these principles, he should be allowed an extension of time to file his direct appeal because the trial judge never informed him of his constitutional right to appeal, but instead erroneously told him he had no right to appeal from a judgment and sentence entered on a guilty plea. Barajas adds that the record lacks a showing that he knowingly, voluntarily, and intelligently waived his right to appeal. Instead, he contends he acted with reasonable diligence in seeking review once he became aware of the dire immigration consequences of his guilty plea. We agree.

Petronilo Barajas' signed statement of defendant on plea of guilty shows that he gave up his right "to appeal a finding of guilt after a trial." CP at 5. At the plea/sentencing hearing, the court asked Barajas if he understood that by pleading guilty

7

he gave up his right to trial and his right to appeal. The court mistakenly did not advise him of his 30-day appeal right after sentencing, as required by CrR 7.2(b).

In a declaration in support of his motion to extend time, Petronilo Barajas avers that no one explained to him that he had "any right to have any appeal." CP at 72. He declares that his lawyer told him he was making a choice to take the State's plea deal and that he could not change his mind later and appeal. Barajas further states, "If I would have known all what I know now about losing my green card and that I still could have filed an appeal, I would have done this." *Id.* The State offers no contrary evidence.

The State argues that Petronilo Barajas' recent declaration addresses matters outside the trial court record, and therefore his remedy is to file a personal restraint petition, rather than a RAP 18.8(b) motion to extend the time to file an appeal. To the contrary, RAP 17.4(f) allows a party to file "affidavits and other papers" in support of a motion.

Under *Kells* and *Sweet*, Petronilo Barajas could not waive or abandon an appeal right of which the court and his counsel did not apprise him. *See also State v. Chetty*, 167 Wn. App. 432, 444, 272 P.3d 918 (2012) (effectiveness of counsel under *Padilla* is a circumstance that bears on validity of defendant's waiver of right to appeal and, in turn, on ultimate determination whether to extend time to file notice of appeal under RAP 18.8(b)). We thus defer to Barajas' constitutional right to appeal and grant his motion for

8

extension of time to file his appeal, while denying the court's motion to dismiss the appeal.

Petronilo Barajas' personal restraint petition is also timely under the one-year limitation period in RCW 10.73.090(1), since a judgment and sentence is not final until the direct appeal is mandated. RCW 10.73.090(3)(b) (judgment becomes final on date appellate court issues its mandate disposing of a timely direct appeal from the conviction). This conclusion renders irrelevant the recent decisions holding that *Padilla* does not apply retroactively on collateral attack to cases that were final when *Padilla* was announced in 2010. *See Chaidez v. United States*, __ U.S. __, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013); *State v. Martinez-Leon*, 174 Wn. App. 753, 300 P.3d 481, *review denied*, No. 892016 (Wash. Dec. 11, 2013). *Padilla* applies on the merits of Barajas' timely appeal and timely PRP.

*Merits of the Appeal/PRP*. Petronilo Barajas asserts that his counsel rendered ineffective assistance under *Padilla* by failing to advise him that his marijuana manufacturing conviction subjected him to inevitable lifetime deportation under federal immigration law. He contends this failure rendered his plea involuntary and unintelligent and that he was prejudiced by counsel's inadequate advice because he would have pled not guilty and gone to trial had he been apprised of the deportation consequences. He concludes the proper remedy is to vacate his guilty plea and convictions. *State v.*

*Sandoval*, 171 Wn.2d 163, 249 P.3d 1015 (2011). We agree.

The State initially contends that a defendant may not appeal a conviction on the theory that his guilty plea was unknowing and involuntary. Two cases hold to the contrary. In *Sandoval*, 171 Wn.2d at 168, the court allowed a petitioner to file a direct appeal and concurrent PRP claiming his plea was not knowing, voluntary, or intelligent due to ineffective assistance of counsel. In *State v. Mendoza*, 157 Wn.2d 582, 589, 141 P.3d 49 (2006), the court held that a defendant may challenge the voluntariness of his plea for the first time on appeal.

We must first determine the standard of review to apply given the unusual procedural posture of Petronilo Barajas' case—a motion to vacate the guilty plea transferred as a personal restraint petition with a later consolidated direct appeal. A personal restraint petitioner alleging constitutional error must typically show actual and substantial prejudice, but that standard does not apply when the petitioner has not had a prior opportunity to appeal the issue to a disinterested judge. *Sandoval*, 171 Wn.2d at 168 (citing *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 214, 227 P.3d 285 (2010)). Like *Sandoval*, Barajas had to bring a PRP to show ineffective assistance of counsel because counsel's advice being challenged as ineffective did not appear in the original trial court record and he had to bring a postjudgment motion. *Id.* at 169-70 ("'If a defendant wishes to raise issues on appeal that require evidence or facts not in the

10

existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal.'" (quoting *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995))). Because of this unique procedural obstacle to Barajas' claim, he has not "'already had an opportunity to appeal to a disinterested judge.'" *Id.* at 169 (quoting *Grantham*, 168 Wn.2d at 214). Thus, his burden is to show only that he is entitled to relief for one of the reasons listed in RAP 16.4(c). *Id.* (citing *Grantham*, 168 Wn.2d at 214). In turn, he possesses the burden of establishing some prejudice required for a claim of ineffective assistance of counsel based on an attorney's advice during the plea bargaining process. *Id.* (citing *Padilla*, 559 U.S. at 371-72; *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

The Sixth Amendment right to effective assistance of counsel encompasses the plea process. *Sandoval*, 171 Wn.2d at 169 (citing *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780, 863 P.2d 554 (1993); *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). Faulty advice of counsel may render the defendant's guilty plea involuntary or unintelligent. *Id.* (citing *Hill*, 474 U.S. at 56; *McMann*, 397 U.S. at 770-71). To establish that the plea was involuntary or unintelligent due to counsel's inadequate advice, the defendant must show under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that his attorney's

11

performance was objectively unreasonable and that he was prejudiced by the deficiency. *Sandoval*, 171 Wn.2d at 169.

In *Padilla*, the Supreme Court explained that because of deportation's "close connection" to the criminal process, advice about deportation consequences falls within "the ambit of the Sixth Amendment right to counsel." *Padilla*, 559 U.S. 366. *Padilla* states that because "[i]mmigration law can be complex," the precise advice required depends on the clarity of the law. *Id.* at 369. If the applicable immigration law "is truly clear" that an offense is deportable, defense counsel must correctly advise the defendant that pleading guilty to that particular charge would lead to deportation. *Id.* If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

Prior to *Padilla*, deportation was considered to be a collateral consequence under Washington law and anything short of an affirmative misrepresentation by counsel of the plea's deportation consequences could not support a plea withdrawal. *Sandoval*, 171 Wn.2d at 170 n.1 (citing *In re Pers. Restraint of Yim*, 139 Wn.2d 581, 587-89, 989 P.2d 512 (1999)). *Padilla* explicitly rejected the proposition that only affirmative misadvice about deportation consequences of the plea, and not failure to give such advice, could constitute ineffective assistance of counsel. *Padilla*, 559 U.S. at 369-74. *Padilla* also emphasized that for "at least the past 15 years, professional norms have generally

imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Id.* at 372.

In *Padilla*, the defendant pled guilty to transporting a significant amount of marijuana in his truck—an obviously deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

The court deemed this statute "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla*, 559 U.S. at 368. By simply "reading the text of the statute," Padilla's lawyer could determine that a plea of guilty would make Padilla eligible for removal. *Id.* Counsel was thus ineffective for misadvising Padilla that he would not have to worry about immigration status since he had been in the country so long. *Id.* at 359, 368-69.

In *Sandoval*, counsel advised the defendant to accept the State's plea offer to third degree rape because he would not be immediately deported and would have sufficient time to retain proper immigration counsel and ameliorate any potential immigration consequences of his plea. *Sandoval*, 171 Wn.2d at 167. The court concluded counsel performed deficiently by incorrectly dismissing the risks of deportation and not

13

informing the defendant that third degree rape equated to an "aggravated felony" under federal immigration law that certainly subjected him to deportation. *Id.* at 174.

We ask whether Petronilo Barajas' counsel failed, in 2006, to meet the constitutional standard of competence for advice about the immigration consequences of his plea to manufacturing marijuana. To assess whether counsel's advice failed to comport with the *Padilla* standard, we must determine whether the relevant immigration law was "truly clear" about the deportation consequences. *See id.* at 169-70.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "Any alien who is convicted of an aggravated felony at any time after admission is deportable."[1] An alien convicted of an aggravated felony is not eligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3), (b)(1)(C). "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(B) to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Under 18 U.S.C. § 924(c)(2), the term "drug trafficking crime" means "any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 et seq.)." Thus, the question is whether Petronilo Barajas' Washington marijuana manufacturing conviction qualifies as an

---

[1] The federal statutes cited herein are all from the 2006 version in effect when Mr. Barajas' committed the manufacturing marijuana crime and entered his guilty plea. The current versions of the statutes contain no differences pertinent to the outcome.

14

"aggravated felony," under 8 U.S.C. § 1101(a)(43)(B), i.e., a felony punishable under the Controlled Substances Act.

The United States Supreme Court recently reiterated established case law that, when the Government alleges a state conviction qualifies as an "aggravated felony" under the INA, a "categorical approach" is employed to determine whether the state offense is comparable to an offense listed in the INA. *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684, 185 L. Ed. 2d 727 (2013). Under this approach, to qualify as an "aggravated felony" under the INA, "a state drug offense must meet two conditions: It must 'necessarily' proscribe conduct that is an offense under the [Controlled Substances Act], and the [Controlled Substances Act] must 'necessarily' prescribe felony punishment for that conduct." *Id.* at 1685.

The State convicted Petronilo Barajas under RCW 69.50.401(1), which establishes a class C felony in Washington of "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." *See* RCW 69.50.401(2)(c). Under the categorical approach, when a state statute describes several different crimes, the immigration court may identify which particular offense the noncitizen was convicted of by examining the plea agreement, plea colloquy, or comparable record of the factual basis for the plea. *Moncrieffe*, 133 S. Ct. at 1684. Barajas' plea agreement and judgment and sentence establish that the court convicted Barajas of the first of the offenses listed in

15

RCW 69.50.401(1)—"manufacture" of marijuana. The probable cause affidavit for the plea states that Barajas grew 400 marijuana plants and intended to sell them. We must then ask whether manufacture of marijuana is "necessarily" conduct punishable as a felony under the Controlled Substances Act. *See Moncrieffe*, 133 S. Ct. at 1685. It is.

Manufacturing marijuana in any amount is a felony punishable under the Controlled Substances Act. 21 U.S.C. § 841(a)(1), (b). In particular, in 2006, manufacturing 100 or more marijuana plants regardless of weight was a class B felony. 21 U.S.C. § 841(b)(1)(B)(vii); 18 U.S.C. § 3559(a)(2). Under 21 U.S.C. § 841(b)(1)(D) and 18 U.S.C. § 3559(a)(4), manufacturing 50 kilograms or less of marijuana was a class D felony. There was no misdemeanor offense of manufacturing marijuana under federal law. The only misdemeanor exception was for "*distributing* a small amount of [marijuana] for no remuneration"—an exception not applicable to Petronilo Barajas' *manufacture* of 400 marijuana plants (with a remunerative motive). 21 U.S.C. §§ 841(b)(4) (emphasis added), 844(a); 18 U.S.C. § 3559(a)(6).[2] Thus, when Barajas entered his guilty plea, manufacturing marijuana in Washington was "categorically" a felony punishable under the Controlled Substances Act and met the "illicit trafficking in a

---

[2] Manufacturing marijuana remains a felony under current federal law. Manufacturing 50 or more marijuana plants is a class C felony. 21 U.S.C. § 841(b)(1)(C), (D); 18 U.S.C. § 3559(a)(3). Manufacturing 50 kilograms or less of marijuana is a class D felony. 21 U.S.C. § 841(b)(1)(D); 18 U.S.C. § 3559(a)(4). There is no misdemeanor offense of manufacturing marijuana.

16

controlled substance" definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B).

Under *Padilla*, we perceive the law to be sufficiently succinct and straightforward for a constitutionally competent lawyer to have determined in 2006 that manufacturing marijuana was an aggravated felony for which Petronilo Barajas faced certain deportation. *See also State v. Martinez*, 161 Wn. App. 436, 253 P.3d 445, *review denied*, 172 Wn.2d 1011 (2011) (concluding law is clear that possessing a controlled substance with intent to deliver is an aggravated felony that, if committed by an alien, is a deportable offense). To conform to a minimum level of competency, defense counsel should have advised Barajas of the inevitable deportation consequence, as opposed to limiting discussion to the general warning about immigration consequences required by RCW 10.40.200 as contained in the written plea agreement. *See Sandoval*, 171 Wn.2d at 172-73 (observing that *Padilla* cited to RCW 10.40.200 and found that such warnings do not excuse defense attorneys from informing the noncitizen client of the risk of deportation). Counsel failed to provide this warning.

Petronilo Barajas' counsel states in his declaration that he does not recall being aware of Barajas' immigration status and that they discussed only the general immigration warnings that were part of the guilty plea statement. Counsel recalls what his general practices were at the time:

17

> In 2006, the law as I understood in Washington State was that a criminal defense attorney must not give affirmative misadvice as to the immigration consequences of a guilty plea. As a criminal defense attorney, I relied on the law at that time which stated that if I gave the general immigration warnings that were part of the guilty plea statement that this was within the bounds of professional competence.

CP at 59. Counsel further states that, as a result of *Padilla*, he would now warn Barajas that his guilty plea to manufacturing marijuana would inevitably lead to deportation. Other counsel, by declaration, avers that manufacturing marijuana has been categorized as an aggravated felony under federal immigration law since at least 1988, and that the immigration consequences pertaining to Barajas were certain and easily ascertainable at the time of his 2006 plea.

Barajas states in a declaration:

> When I decided to plead guilty, I was never told specifically that I would absolutely lose my green card by pleading guilty to growing marijuana in this case. I remember receiving general warnings in the papers that there could be some immigration problems but I didn't know that there wouldn't be any chances at all for me to keep my green card.

CP at 61. Petronilo Barajas also declares that his counsel never inquired about his citizenship and did not tell him of any possibility of deportation.

The next question is whether Petronilo Barajas was prejudiced by his attorney's lack of advice. A defendant establishes prejudice under *Strickland* by showing that, but for counsel's alleged deficiency, he would not have pled guilty and would have insisted on going to trial. *See Sandoval*, 171 Wn.2d at 174-75. A "reasonable probability" of

18

prejudice exists if the defendant "'convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* at 175 (alteration in original) (quoting *Padilla*, 559 U.S. at 372). "This standard of proof is 'somewhat lower' than the common 'preponderance of the evidence' standard." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Petronilo Barajas earned permanent residency and made the United States his home since 1989. He had no prior criminal history and the State did not drop any charges as part of the plea agreement. Whether he pled guilty or went to trial, he still faced the same standard range sentences of 0-6 months for manufacturing marijuana and 0-12 months for animal fighting, with a 5-year statutory maximum for each crime. Either way a marijuana manufacturing conviction subjected him to certain deportation. As *Sandoval* recognizes:

> [T]he deportation consequence of his guilty plea is also "a particularly severe 'penalty.'" *Padilla*, [559 U.S. at 365] (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740, 13 S. Ct. 1016, 37 L. Ed. 905 (1893)). For criminal defendants, deportation no less than prison can mean "banishment or exile," *Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S. Ct. 10, 92 L. Ed. 17 (1947), and "separation from their families," *Padilla*, [559 U.S. at 370].

*Sandoval*, 171 Wn.2d at 175-76.

Petronilo Barajas does not expressly state in his declaration that he would not have pled guilty had he known of the deportation consequence, but he avers that he would

19

have appealed his convictions due to involuntary and unknowing plea had he known he could do so. The very reason for this appeal and collateral attack is his lack of being informed of certain deportation consequences. As Petronilo Barajas argues in his motion to vacate/PRP, he had nothing to lose by going to trial instead of pleading guilty. Given the severity of the deportation consequence, it would have been rational for Barajas to take his chances at trial. *See id.* at 176.

Under the circumstances, Petronilo Barajas shows prejudice from counsel's unreasonable advice. He meets both prongs of the *Strickland* test. For purposes of the PRP, he shows unlawful restraint under RAP 16.4(c)(2) (conviction obtained in violation of the Constitution of the United States). His guilty plea and convictions are therefore vacated.

In summary, Mr. Barajas' motion for extension of time to file his appeal is granted. The court's motion to dismiss the appeal as untimely is denied. The guilty plea and convictions are vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.

20

No. 30154-1-III consol. w/30775-1-III
*In re Pers. Restraint of Barajas; State v. Barajas*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, C.J.

Kulik, J.