# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 48430-7-II |
| FORREST AMOS, | PART PUBLISHED OPINION |
| Petitioner. | |

BJORGEN, C.J. — Forrest Amos seeks relief from personal restraint imposed following a guilty plea. As part of his guilty plea, Amos agreed to waive his right to collaterally attack his judgment and sentence.

In the published portion of this opinion we address whether this personal restraint petition (PRP) was timely filed and whether it is precluded by Amos' collateral attack waiver. We hold that Amos' PRP was timely. We also hold that a collateral attack waiver is valid, as long as the waiver was made knowingly, voluntarily, and intelligently, and that ineffective assistance of counsel may call those features of the waiver into question. We hold that Amos has made a prima facie showing of prejudice on his claim that ineffective assistance of counsel calls into question whether his collateral attack waiver was knowing and voluntary. However, on this record we cannot fully determine whether Amos' waiver in fact was knowing, voluntary, and intelligent. Thus, we remand for an evidentiary hearing to determine the disputed facts necessary

to decide the validity of his waiver, as well as to make a determination on the merits of this PRP that is consistent with this opinion.

In the unpublished portion of this opinion, we address Amos' claim that his sentence of imprisonment in the custody of the Department of Corrections (DOC) for his gross misdemeanors was not authorized by statute and thus was void. We hold that sentence to be void and remand to the trial court to determine the proper remedy. The trial court need not address the sentencing issue if it dismisses Amos' charges in its determination of this PRP on the merits.

FACTS

Amos was charged with the following felonies: leading organized crime, tampering with a witness, computer trespass, possession of marijuana with intent to manufacture or deliver, introducing contraband, one count of attempted theft, three counts of possession of a controlled substance with intent to manufacture or deliver, four counts of delivery of a controlled substance, and one count of identity theft. In addition, he was charged with two gross misdemeanors: attempted possession of marijuana with intent to manufacture or deliver and attempted forgery.

While Amos was being held in the Lewis County Jail on these charges, Officer Adam Haggerty obtained a warrant to search Amos' jail cell for evidence that Amos was tampering with witnesses related to these pending charges. In his declaration in support of the search warrant, Haggerty averred that Amos had been using legal mail, which may be protected by attorney-client privilege, to disguise his criminal conduct. Haggerty's declaration stated that he would inspect all mail addressed as legal mail to "confirm the authenticity of whether o[r] not Defense Attorney . . . was the actual sender/recipient." Clerk's Papers (CP) at 176.

2

On June 18, 2014, Haggerty executed a search of Amos' cell and what happened during the search is disputed. In his declaration of March 22, 2016, Haggerty states that he put all of the recovered items, including the legal mail, into a trash bag and placed it in an evidence facility. Amos states in his declaration attached to his reply brief that Haggerty, along with Detective Chad Withrow and "a number of jail staff," executed the search of his cell. Reply Br. of Pet'r at App'x 1, ¶5. Amos describes the claimed violation of his attorney-client relationship in the following way:

> 6.) While in my cell . . . Haggerty and . . . Withrow read through all my privileged communications. I observed this while standing in the dayroom of D2 unit. I observed . . . Withrow sitting at my cell table reading through my legal paperwork and when he s[aw] something he would point it out to . . . Haggerty who would place it [in] a clear plastic bag. About thirty minutes later I was allowed back into my cell.
>
> 7.) All my legal mail was taken. This included a letter from [prior defense counsel] regarding conversations we had about [a] State witness . . . contacting me using fake names and how we would communicate. This fact known by the State could have been used to impeach my testimony if I were to take the stand in my defense.
>
> 8.) All my legal materials, case narratives, and defense strategies, and witness questions were taken. I was asked by my attorney . . . to write questions and fact sheets as I went through my case discovery in order to aid him in my defense and witness interviews. These writings contained vital strategies outlin[]ing facts that ruined the State's case. It took me months to prepare these writings and before I could give them to my counsel they were read and seized.
>
> 9.) My case discovery was taken so I could not assist my attorney in preparing my defense.

Reply Br. of Pet'r at App'x 1, ¶ 6-9.

At subsequent status hearings in July 2014, Amos' defense counsel confirmed that the search had taken place. Counsel told the trial court that he was having trouble retrieving the legal documents and that Amos' ability to prepare a defense was being hampered because of it.

3

The deputy prosecutor, William Halstead, suggested that the court conduct an in camera review of the legal documents retrieved from the search of Amos' cell, but the court declined to do so because defense counsel had not prepared a motion.[1]

At the July 24 hearing, defense counsel expressed concern about the search of Amos' cell, stating that Amos had informed him that jail staff had looked through all of Amos' legal paperwork. At this hearing, a different deputy prosecutor stated that before the search of Amos' cell, he advised Haggerty

> not to look at any of the materials and to give them to a judge so that the judge could review it to see what was privileged before he looked at it, and I made that request to him specifically out of concern that it otherwise might be considered eavesdropping on attorney-client privileged materials.

Report of Proceedings (RP) (July 24, 2014) at 7. The prosecutor stated that after the search, Haggerty told him that jail staff had "very cursorily, very briefly just flipped through things to find stuff." RP (July 24, 2014) at 7. However, the prosecutor stated that he thought that there still needed to be a hearing on the issue. The trial court expressed concern with the search and recommended that defense counsel set a hearing regarding these issues.

According to Amos, the week before the July 24 hearing defense counsel informed him that he was preparing a CrR 8.3(b) motion to dismiss Amos' charges based on the jail staff's violation of his confidential attorney-client relationship. Amos further contends that on July 24,

---

[1] According to the declarations of Haggerty and Halstead, the judge performed an in camera review of the documents before allowing the Centralia police to collect the documents as evidence. However, we do not have a record of this hearing or a record of what happened to the documents after the in camera review.

defense counsel incorrectly informed him that he had to prove prejudice and that counsel refused to file the motion for that reason.

At the next hearing, on July 31, Amos agreed to a plea deal. In exchange for dropping the charges for leading organized crime and one count of identity theft, Amos pled guilty to the remaining charges. Amos' guilty plea states that he "waives rights to file appeals and pers[onal] rest[raint] petitions in this matter." CP at 60. Amos' initials appear near that statement. As part of the plea agreement, the State and Amos agreed that he should receive 120 months for his felony convictions. In addition, they agreed that Amos should receive 364 days for each of his two gross misdemeanor counts to run consecutively to the felony counts. They also agreed that Amos should spend his entire incarceration time for both the felonies and gross misdemeanors in DOC custody.

The trial court conducted a colloquy to determine whether Amos was knowingly, intelligently, and voluntarily pleading guilty. Among other inquiries, the court asked Amos whether he understood that he was giving up the rights set forth in his guilty plea form, to which Amos responded yes. The court specifically asked Amos whether he understood that he was "waiving [his] right to file appeals and [his] right to file personal restraint petitions in this matter," to which Amos responded in the affirmative. RP (July 31, 2014) at 18. The court accepted Amos' pleas of guilty, finding that he knowingly, intelligently, and voluntarily entered into the pleas with "full knowledge of the consequences and awareness of rights." RP (July 31, 2014) at 19.

Along with the guilty plea and the colloquy, Amos signed a separate document outlining his waiver of appeal and collateral attack rights. It states:

5

I, FORREST EUGENE AMOS, the above named Defendant, after having been fully advised by my attorney . . . and as part of a plea agreement that removes Count I (a most serious offense) and Count IX from the charges against me, do knowingly, intelligently, and voluntarily enter the following waiver.

I agree that the plea agreement that has been negotiated for me in this case is in my best interest and requires that I waive certain rights that I might otherwise possess. Specifically, I waive any right I might have to make a motion to withdraw my plea of guilty or to initiate any appeal as to my plea of guilty. I also waive any right I might have to attack the judgment and sentence that will be entered against me in this case, either by collateral attack or appeal.

I recognize that by entering this waiver, my plea of guilty and the judgment and sentence will be final. I will no longer possess any rights to appeal, to initiate personal restraint petitions, or any other forms of relief regarding my plea of guilty or the judgment and sentence in this matter.

CP at 83-84.

Amos was sentenced on August 20, 2014, consistently with the plea agreement. At the sentencing hearing, the court and counsel also discussed where Amos would serve his time on the gross misdemeanors:

[State]: I would ask the Court to apply [Amos' good time] credit to one of the gross misdemeanors so that he gets credit on that as opposed to the time he's going to have to do in DOC so he can do that time in DOC and not have to come back to the jail. Because that's going to be an issue. I've already been contacted by the jail. They want to know if he can do the whole sentence in DOC. Of course we don't have any problem with that, but if he's got time left over, DOC's probably going to send him back.

[Court]: The name of the game is when Mr. Amos is done with DOC. Mr. Amos wants to be done, period.

[Defense]: Yes.

[State]: I'm assuming that's correct, and the jail also wants to be finished with him. But, you know, all we can do is hope that DOC will house him for the entire time, but it will help if he gets that 262 days toward one of the gross misdemeanors.

RP (Aug. 20, 2014) at 4-5.

Counsel also stated at this proceeding:

6

> [Defense]: Thank you, Your Honor. I actually think there's a provision where these gross misdemeanors can be served in the Department of Corrections.
> . . . .
> My understanding is that when gross misdemeanors are sentenced alongside felonies, they can actually do the gross misdemeanor time at DOC. I think there's a case right on point.
>
> [State]: I agree with that, but I don't think DOC has to at the time.

*Id.* at 6-7. Amos' judgment and sentence reflected that he would serve the gross misdemeanor time at DOC.

Just over a week later, a DOC staff member sent an e-mail to the deputy prosecutor stating that under *State v. Besio*, 80 Wn. App. 426, 907 P.2d 1220 (1995), gross misdemeanor time must be served at the county jail. As such, DOC recommended removal of the confinement time related to the gross misdemeanors. The deputy prosecutor and defense counsel subsequently stipulated, apparently without Amos' consent, to amend Amos' judgment and sentence to reflect that the gross misdemeanor time be served at Lewis County Jail. The trial court entered an order amending the judgment and sentence on October 31, 2014.

Amos, pro se, appealed the amended judgment and sentence to this court. Amos also moved the trial court to correct a sentencing error by ordering the gross misdemeanor time to run concurrently to his felony convictions.[2]

In January 2015, Amos, again pro se, appeared before the trial court. He argued that his counsel had improperly represented that the law allowed his gross misdemeanors to be served at DOC. Amos expressed concern that he would not be able to participate in rehabilitation programs within DOC because of this hold to return to county jail. The trial court removed the

---

[2] He also argued in this motion to dismiss all his charges under CrR 8.3(b) for the unlawful intrusion into his attorney-client privileges.

amendment to the judgment and sentence, which reinstated the original judgment and sentence ordering all time to be served in DOC custody. This ruling vacating the amendment was effective January 8, 2015.

Amos' appeal of the amended judgment and sentence was mooted by the trial court's decision to reinstate the original judgment and sentence. We dismissed that appeal, and a mandate was issued on April 24, 2015.

On January 5, 2016 Amos filed this PRP with his sworn declaration attesting to some of the contested facts above. The State filed a response and attached many exhibits, including the declarations of Haggerty and Halstead, also setting out some of the contested facts discussed above.

## ANALYSIS

### I. STANDARD OF REVIEW

"To be entitled to collateral relief through a PRP the petitioner must prove error 'by a preponderance of the evidence.'" *In re Pers. Restraint of Crow*, 187 Wn. App. 414, 420-21, 349 P.3d 902 (2015) (quoting *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 490, 251 P.3d 884 (2010)). If the petitioner is able to show error, he or she then must also prove prejudice, the degree of which depends on the type of error shown. *Id.* at 421.

In general, if alleging a constitutional error, the petitioner must demonstrate it resulted in actual and substantial prejudice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). "Actual and substantial prejudice, which 'must be determined in light of the totality of circumstances,' exists if the error 'so infected petitioner's entire trial that the resulting conviction violates due process.'" *Crow*, 187 Wn. App. at 421 (quoting *In re Pers. Restraint of*

*Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985)); *see also*, *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). If alleging a nonconstitutional error, the petitioner must meet a stricter standard and demonstrate the error resulted in a fundamental defect which inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015); *Woods*, 154 Wn.2d at 409. To prevail, a petitioner must make a prima facie showing of either actual and substantial prejudice or a fundamental defect. *Schreiber*, 189 Wn. App. at 113.

If the petitioner makes a "a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record," we may remand the petition for a full hearing on the merits pursuant to RAP 16.11(a) and RAP 16.12. *Monschke*, 160 Wn. App. at 489.

## II. TIMELINESS

As an initial matter, the State argues that this PRP is untimely because Amos filed it over a year after his judgment and sentence was entered. We disagree.

"No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). As pertinent here, "a judgment becomes final on the . . . date it is filed with the clerk of the trial court [or] [t]he date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction." RCW 10.73.090(3)(a)-(b).

Amos' petition, filed on January 5, 2016, is timely. His original judgment and sentence was entered on August 20, 2014. On October 30, the sentencing court entered an order

amending the judgment and sentence, modifying aspects of the sentence. Then, on January 8, 2015, the court entered an order stating simply that "[t]he order amending judgment and sentence is vacated (entered 10-30-14)." CP at 149. Although Amos ultimately was subject again to the original judgment and sentence, both the October 30, 2014 amendment to that original judgment and sentence and the January 8, 2015 vacation of that amendment changed the terms to which Amos was subject.

Only on January 8, 2015 was the final form and content of Amos' judgment and sentence fixed. That is the judgment and sentence challenged by this PRP. To dismiss this PRP because Amos did not file it within one year of a partially rescinded and subsequently restored judgment and sentence would subject Amos to a moving target that serves neither clarity nor fairness. For these reasons, Amos' judgment and sentence became final on January 8, 2015. His PRP, filed on January 5, 2016, was thus timely.[3]

### III. WAIVER OF COLLATERAL ATTACK

Whether Amos' waiver of his collateral attack right as part of his plea agreement precludes this PRP is a novel question in Washington. We hold that a defendant can waive his right to collaterally attack his judgment and sentence, as long as the State meets its burden to show that the waiver was made knowingly, voluntarily, and intelligently. A defendant may also

---

[3] The State in its response brief also contended that this PRP could be dismissed because it is a mixed petition. However, in our July 5, 2016 order requesting additional briefing, we stated that the State "must notify this court and Petitioner if it intends to rely on its earlier briefing." Order for Add'l Briefing, *In re PRP of Amos*, No. 48430-7-II, (July 5, 2016). The State does not reassert in its supplemental brief that the petition is mixed, and we, therefore, do not address that claim.

challenge that waiver if he can show that he received ineffective assistance of counsel that tainted the validity of the waiver.

A.      Legal Principles

It is well established in Washington that a defendant may waive his right to a direct appeal.  *E.g.*, *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998).  In order to uphold that waiver, the State carries the burden of demonstrating that a defendant made a "voluntary, knowing, and intelligent waiver of the right to appeal."  *State v. Sweet*, 90 Wn.2d 282, 286, 581 P.2d 579 (1978); *accord State v. Tomal*, 133 Wn.2d 985, 989, 948 P.2d 833 (1997) (collecting cases).

In addition, an ineffective assistance of counsel claim that calls into question the validity of a defendant's waiver may also be raised.  In *State v. Chetty*, the defendant failed to appeal a conviction that made him subject to deportation.  167 Wn. App. 432, 437, 272 P.3d 918 (2012), *modified on remand*, 184 Wn. App. 607 (2014).  Chetty argued that he was entitled to an extension of time to file a direct appeal under RAP 18.8(b) on the grounds that he did not voluntarily, knowingly, and intelligently waive his constitutional right to appeal because his attorney did not advise him about the deportation consequences of the conviction or the advantages and disadvantages of filing an appeal.  *Id*.  In reliance on *Padilla v. Kentucky*, 559 U.S. 356, 364-75, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), other federal court decisions, and *State v. Sandoval*, 171 Wn.2d 163, 170, 249 P.3d 1015 (2011), the *Chetty* court held that "the effectiveness of counsel is a circumstance that bears on the validity of a defendant's waiver of the right to appeal" and remanded for an evidentiary hearing.  *Chetty*, 167 Wn. App. at 440-44.  In *Padilla*, the defendant pled guilty to a charge that made him subject to automatic deportation.

11

559 U.S. at 359. The Supreme Court held that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. The Supreme Court reversed the state decision denying Padilla post-conviction relief and remanded for an evidentiary hearing. *Id.* at 374-75.

Washington courts, however, have never directly addressed whether a defendant can also waive his right to collateral attack. Within federal and other states' habeas corpus procedures, the answer is that a defendant can waive his right to collateral attack, so long as it is done knowingly and voluntarily. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) (collecting other federal circuits);[4] *Spoone v. State*, 379 S.C. 138, 142-44, 665 S.E.2d 605 (2008) (collecting other states' precedent). We join the myriad of other jurisdictions permitting waiver of collateral attack if done knowingly and voluntarily.

The Fourth Circuit has acknowledged that there is "no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in [a] plea agreement." *E.g.*, *Lemaster*, 403 F.3d at 220 (quoting *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000)). We agree. Each type of waiver abandons otherwise available routes of challenge to a conviction. By its nature, each waiver can be made knowingly, voluntarily, and intelligently. With each waiver, ineffective assistance of counsel can erode its knowing, voluntary, or intelligent nature. Thus, an individual should be able to waive the right to

---

[4] We are aware that there are some variations in the federal circuits. For example, the Third Circuit applies a two-prong test, *i.e.*, whether the waiver of collateral attack is knowing and voluntary; *and* whether it would work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 244 (3d Cir. 2008). The Tenth Circuit requires that the waiver also be expressly stated in the plea agreement. *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001).

collateral attack much as one can waive direct appeal, as long as the waiver was made knowingly, voluntarily, and intelligently. As with a direct appeal, *see Sweet*, 90 Wn.2d at 286, the State carries the burden of demonstrating that a defendant made a knowing, voluntary, and intelligent waiver of his collateral attack right. In the context of a guilty plea, there is a strong presumption that a waiver was voluntary if "a defendant completes a plea statement and admits to reading, understanding, and signing it." *Smith*, 134 Wn.2d at 852.

In addition, the reasoning in *Chetty* and *Padilla*, respectively allowing a waiver of direct appeal or a guilty plea to be attacked through an ineffective assistance of counsel claim, applies with equal force to a collateral attack waiver.[5] In each instance, the waiver of rights can be equally compromised by counsel's dispensing of inaccurate or misleading information or by counsel's failing to provide needed information. Further, in each instance, the waiver may possibly be compromised by other deficiencies in counsel's performance.

In short, a defendant may waive the right to collateral attack, including the right to file a PRP, through a plea agreement. However, it is the State's burden to show that the waiver was done knowingly, voluntarily, and intelligently. A defendant may attack the validity of the waiver by raising an ineffective assistance claim showing that counsel's deficiency calls the validity of the waiver into question.

---

[5] The State acknowledges that a defendant can raise an ineffective assistance of counsel claim with regard to waiver of collateral attack.

B.      The Validity of Amos' Waiver Based on his Written and Oral Statements to the Trial Court

The State argues that Amos cannot directly challenge the validity of the waiver because the record shows he waived that right knowingly and voluntarily. We agree.

Amos' written and oral statements to the trial court show that he knowingly, voluntarily, and intelligently waived his right to collaterally attack his judgment and sentence. On his guilty plea form, Amos placed his initials next to the statement that he "waives rights to file . . . pers[onal] rest[raint] petitions in this matter." CP at 60. Amos answered in the affirmative to the trial court's questions concerning whether he understood that he is giving up the rights set forth in his guilty plea form and that he is "waiving . . . [his] right to file personal restraint petitions in the matter." RP (July 31, 2014) at 18. Most significantly, he also signed a separate document, which specifically stated that he waives "any right I might have to attack the judgment and sentence that will be entered against me in this case, either by collateral attack or appeal" and that "I recognize that by entering this waiver, my plea of guilty and the judgment and sentence will be final. I will no longer possess any rights to appeal, to initiate personal restraint petitions, or any other forms of relief regarding my plea of guilty or the judgment and sentence in this matter." CP at 83-84.

Consequently, the statements through which Amos waived his right to collateral attack, considered alone, show that the waiver was made knowingly, voluntarily, and intelligently.

C.      Ineffective Assistance of Counsel

Next, Amos claims that he received ineffective assistance of counsel in two ways that undermined the validity of his collateral attack waiver and plea: (1) his counsel's failure to move

14

to dismiss his charges after the State violated his attorney/client relationship,[6] and (2) his counsel's misrepresentation that he could serve time for gross misdemeanors at DOC, rather than at the county jail. In keeping with the authority discussed above, we examine whether these two claimed instances call the validity of Amos' waiver into question.

      1.      Legal Principles

Plea bargains have become a central feature of the criminal justice system and are "almost always the critical point for a defendant." *Missouri v. Frye*, 566 U.S. 134, 143-44, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). According to *Frye*, 566 U.S. at 140, claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under that test, the defendant must show (1) that counsel's performance was deficient, and (2) that deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. Counsel is deficient when his performance falls below an objective standard of reasonableness. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To satisfy the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty.[7] *Sandoval*, 171 Wn.2d at 169. "A 'reasonable probability'

---

[6] The State argues that Amos' claim of violation of the attorney-client privilege cannot be characterized as an ineffective assistance of counsel claim because Amos does not cite any of the ineffective of counsel standards. Although not perfectly clear, it can be surmised from the briefing that Amos is arguing his attorney-client privilege claim under the umbrella of ineffective assistance of counsel. For example, Amos states in his supplemental brief that "[t]he more egregiousness [sic] . . . example of ineffective assistance of counsel . . . occurred when the State deliberately violated . . . Amos' right to a confidential attorney-client relationship which in turn affected the voluntariness of his plea and subsequent waiver.". Suppl. Br. of Pet'r at 20.

exists if the defendant 'convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* at 175 (quoting *Padilla*, 559 U.S. at 372).

### 2. Violation of Attorney-Client Confidentiality

Amos argues that he received ineffective assistance of counsel, undermining the voluntariness of his plea,[8] because he lost all faith in his attorney after officers read through his legal documents and that he was left only to plead guilty to the charges. He also contends that his attorney should have moved to dismiss the charges under CrR 8.3(b).

Under CrR 8.3(b):

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

"A defendant's constitutional right to the assistance of counsel unquestionably includes the right to confer privately with his or her attorney."[9] *State v. Fuentes*, 179 Wn.2d 808, 818,

---

[7] This prejudice standard usually requires a showing that a defendant would have not pled guilty *and* would have insisted on going to trial. *Sandoval*, 171 Wn.2d at 169. Given the specific context of this claim, though, the latter part of the standard is not applicable. As explained below, if the actions of the State violated Amos' attorney-client relationship, then the charges should have been dismissed, unless the State proved beyond a reasonable doubt that the violation did not result in any prejudice.

[8] The State argues that Amos waived a challenge to the voluntariness of the plea because he did not raise it in his PRP. We disagree. Amos stated twice in his PRP that he "was left with no other choice but to plead guilty," which is equivalent to saying his plea was involuntary. Br. of Pet'r at 7, 13.

[9] A defendant also has a statutory right to attorney-client privilege. RCW 5.60.060 (2)(a). However, because Amos' Sixth Amendment right to counsel had clearly attached when his cell phone was searched, *State v. Perrow*, 156 Wn. App. 322, 333, 231 P.3d 853 (2010) (Korsmo, J., dissenting), it is not necessary to examine how the statutory right might affect this analysis. (The majority in *Perrow* did not hold to the contrary; the dissent simply clearly brought out this rule).

318 P.3d 257 (2014). "Even 'high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused of [a] crime and his counsel.'" *State v. Granacki*, 90 Wn. App. 598, 602, 959 P.2d 667 (1998) (quoting *State v. Cory*, 62 Wn.2d 371, 374-75, 382 P.2d 1019 (1963)). As relevant to this appeal, prejudice from violating the attorney-client relationship can arise

> from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendants confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial.

*United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (footnote omitted); *see also State v. Garza*, 99 Wn. App. 291, 301, 994 P.2d 868 (2000). A violation of a defendant's attorney-client relationship will result in dismissal of his charges, unless the State can prove beyond a reasonable doubt that the violation did not result in any prejudice to the defendant. *Fuentes*, 179 Wn.2d at 819-20.

In several appellate decisions, violation of a defendant's attorney-client confidentiality resulted in the dismissal of the criminal charges against him. Examples include *Cory*, 62 Wn.2d at 372, where the police installed a microphone in a room where the defendant discussed privileged information with his attorney; and *Granacki*, 90 Wn. App. at 600, where a police detective, who was assisting the prosecution, read defense counsel's legal pads containing trial strategy and tactics. Most similar to the present case is *State v. Perrow*, where the police recovered a document that the defendant's defense attorney had asked him to prepare. 156 Wn. App. 322, 326, 231 P.3d 853 (2010). A detective subsequently analyzed that document's contents, prepared a report, and forwarded it to the prosecutor's office. *Id.*

The question before us is whether the purported violation of Amos' attorney-client

relationship resulted in Amos receiving ineffective assistance of counsel which may have undermined the validity of his plea and waiver. Under Rules of Professional Conduct 1.1, a lawyer shall provide competent representation to a client, which requires thoroughness and preparation reasonably necessary for the representation. Before allowing a defendant to plead guilty, "counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010). A guilty plea is only valid when it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quoting *N. Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)).

If the actions of the State violated Amos' attorney-client relationship, then the charges should have been dismissed, unless the State proved beyond a reasonable doubt that the violation did not result in any prejudice to the defendant. *Fuentes*, 179 Wn.2d at 819-20. If defense counsel had informed Amos of this and filed a CrR 8.3 motion to dismiss, citing *Perrow*, *Granacki*, and *Cory*, Amos would likely have not pled guilty to myriad charges which could have potentially been dismissed before the plea was struck. Thus, if a reasonable investigation would have revealed the violation of the attorney-client relationship, Amos could show that he received ineffective assistance of counsel before the plea deal was struck undermining the validity of his consent to waive his collateral attack rights.[10]

---

[10] Even though the seminal cases discussing violations of the attorney-client relationship, *Cory*, *Perrow*, *Granacki*, and *Fuentes*, involve direct appeals, the logic and principles of these cases similarly apply in the PRP context.

The State argues that the prejudice standard for State intrusions into the attorney-client relationship in direct appeals does not apply in a collateral attack context, and that Amos must establish the "actual prejudice" required to receive relief in a PRP. Suppl. Br. of Resp't at 7-10. We disagree.

To support its argument, the State cites to *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 120-21, 340 P.3d 810 (2014), which states that:

> The petitioner's burden to establish actual and substantial prejudice in a personal restraint petition is generally relaxed only where the error gives rise to a conclusive presumption of prejudice. *This higher standard on collateral review is met only where, in light of the essential purpose of the constitutional right at issue, a violation of the right would necessarily prejudice the defendant.*

(Emphasis added) (citation omitted).

However, the court in *Cory* found that the prejudice resulting from a violation of a defendant's attorney-client relationship cannot be isolated and thus the appropriate remedy is dismissal of the charges. *Cory*, 62 Wn.2d at 377-78. The *Cory* court observed that if the remedy was only to remand for a new trial, the evidence derived from the breach of attorney-client confidentiality could be used in subsequent proceedings against a defendant, which would undermine the desired deterrent effect against individuals attempting to gain knowledge of the defense's strategy. *See id*. As recognized by *Fuentes*, 179 Wn.2d at 819-20, *Cory* presumed prejudice from the violation of the attorney-client relationship. *Fuentes* then recognized that there were "rare circumstances where there is no possibility of prejudice to the defendant" from the eavesdropping there at issue and concluded that dismissal is not required in those circumstances. *Id*. at 819. Consequently, *Fuentes* held that the presumption of prejudice is

19

rebuttable if the State can prove beyond a reasonable doubt that no prejudice occurred. *Fuentes*, 179 Wn.2d at 819-20.

Both *Fuentes*, 179 Wn.2d at 812, and *Cory*, 62 Wn.2d at 372, were direct appeals involving State violations of attorney-client relationships by eavesdropping on conversations between the defendant and his attorney. The present PRP involves alleged State violations of the attorney-client relationship by inspecting Amos' legal documents, including written communications between him and counsel. We see no significant differences among the posture and substance of these cases. Each involve State intrusions into the heart of the attorney-client relationship: communications between the two about the subject of representation. Each involve the sort of prejudice that cannot be isolated, according to *Cory*, 62 Wn.2d at 377. Each involve the sort of abuse that easily can rob a defendant of the ability to act knowingly and voluntarily in waiving rights. Whether these issues are posed through direct appeal or collateral review, the stakes and the dangers are the same. Therefore, the same standards of prejudice should be used. Following *Fuentes*, prejudice is presumed from a State intrusion into the confidential attorney-client relationship and may be rebutted only if the State proves beyond a reasonable doubt that no prejudice occurred. *Fuentes*, 179 Wn.2d at 819-20.

Under these standards, the merits of whether Amos validly waived his right to collateral attack cannot be determined on this record.[11] Amos submitted a declaration that averred (1) his prior defense counsel asked him to prepare documents for his defense, (2) he prepared "case narratives, witness questions" and "defense strategies," and (3) he "observed" Haggerty and

---

[11] Amos invites us to examine the documents themselves to determine prejudice and whether dismissal of charges is warranted. We are not a fact finding court and decline to do so.

Withrow "read[ing] through all [his] privileged communications" for approximately 30 minutes. Reply Br. of Pet'r, App'x 1 at ¶ 3, 6, 7. His declaration also states that (4) his defense counsel told him he was preparing a CrR 8.3(b) motion to dismiss, but informed him of the incorrect prejudice standard and did not submit the motion, and (5) he lost all confidence in his attorney and would not have pled guilty if the State had not intruded into his attorney-client relationship. The State submitted its own evidence, which rebuts Amos' claim that officers looked through his privileged materials.

On this record, it cannot be determined whether Amos received ineffective assistance of counsel that undermined the validity of his plea and waiver.[12] However, because Amos made "a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record," we remand the petition for a full hearing on the merits pursuant to RAP 16.11(a) and RAP 16.12. *Monschke*, 160 Wn. App. at 489. The trial court will conduct a factual hearing to determine (1) the nature of the cell search, (2) whether officers or other State officials seized or reviewed documents, (3) what were the nature and contents of those documents, (4) if a violation of the attorney-client relationship did occur, whether the State can show beyond a reasonable doubt that Amos was not prejudiced (5) whether Amos would not have pled guilty but for his attorney's deficient actions or advice; and (6) any other factual questions the trial court deems necessary to make a determination.

---

[12] At oral argument, the State argued that Amos failed to show that the prosecutor's office had received any privileged attorney-client information from Haggerty and thus fails to establish his claim. Wash. Court of Appeals, *In re Pers. Restraint of Amos*, No. 48430-7-II, oral argument (May 25, 2017), at 16:30-50 (on file with court). In *Granacki*, 90 Wn. App. at 600, 604, though, there was no evidence that the police detective ever passed on the defense's strategies to the prosecutor involved in the case. Yet, the court still found that dismissal of the defendant's charges was warranted. Thus, we disagree with the State's argument.

This remand is not for a reference hearing, but rather for a determination of the PRP on the merits pursuant to RAP 16.11(a) and 16.12. Amos may not raise any new issues not already raised in the PRP or this opinion. At the conclusion, the trial court shall enter findings of fact, conclusions of law, and an order deciding the petition consistently with this opinion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

### III. CHALLENGE TO GROSS MISDEMEANOR INCARCERATION TIME

Amos contends that sentencing him to serve time for the gross misdemeanors in the custody of DOC is unauthorized by statute and is therefore void. He argues, as set out above, that his waiver of collateral attack is invalid due to ineffective assistance of counsel relating to the alleged violation of his attorney-client relationship. He also argues that counsel's advice to waive his right to collateral attack itself constituted ineffective assistance making the waiver invalid.

We first examine whether the rule in *Besio*, 80 Wn. App. 426, that gross misdemeanors are punished by imprisonment in the county jail remains good law. Given the plain language of former RCW 9A.20.021(2) (2011), we decline to depart from *Besio*.

In *Besio*, Division One of our court held that a defendant must serve time for gross misdemeanors at the county jail, even if sentenced along with felonies which are served at DOC. *Besio*, 80 Wn. App. at 427. In coming to its holding, *Besio* reconciled two sets of statutes, one under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, and the other under Washington's Criminal Code, chapter 9A.20 RCW. Washington's Criminal Code directs that

22

gross misdemeanors "*shall* be punished by imprisonment in the county jail" for a maximum term of 364 days. Former RCW 9A.20.021(2) (emphasis added). On the other hand, the SRA, which was primarily enacted to regulate felony offenders, directs that

> [a] sentence that includes a term or terms of confinement totaling more than one year shall be served in a facility or institution operated, or utilized under contract, by the state.

RCW 9.94A.190(1).

In harmonizing these statutes, *Besio* concluded that the "SRA scheme applies solely to felony convictions" and "does not purport to apply to sentences containing both felony and misdemeanor terms or otherwise attempt to address convictions for classifications other than felonies." *Besio*, 80 Wn. App. at 431. We approved *Besio*'s holding in *Mortell v. State*, 118 Wn. App. 846, 851-52, 78 P.3d 197 (2003).

The primary objective of statutory construction is to ascertain and carry out the intent of the legislature. *Bowie v. Dep't of Revenue*, 171 Wn.2d 1, 10, 248 P.3d 504 (2011). Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself. *Id.* Here, the plain, unequivocal language of former RCW 9A.20.021(2) requires sentencing courts to direct gross misdemeanor time to be served in county jail.

At oral argument, the State argued that RCW 9.94A.190(1)'s reference to "term or *terms* of confinement," shows that a gross misdemeanor term can be served with a felony term at DOC. Wash. Court of Appeals, *In re Pers. Restraint of Amos*, No. 48430-7-II, oral argument (May 25, 2017), at 24:35-40 (on file with court) (emphasis added). However, "[a] general statutory provision normally yields to a more specific statutory provision." *W. Plaza, LLC v. Tison*, 184

23

Wn.2d 702, 712, 364 P.3d 76 (2015). Former RCW 9A.20.021(2) commands that gross misdemeanors "*shall* be punished by imprisonment in the county jail." (Emphasis added.) Even assuming that RCW 9.94A.190(1) might contemplate gross misdemeanors, the more particularized direction of former RCW 9A.20.021(2) resolves any ambiguity in RCW 9.94A.190(1)'s reference to "terms."

The State also submitted compelling evidence that DOC, as opposed to Lewis County Jail, is in a better position to achieve the SRA's rehabilitative goals. For example, DOC has programs for substance abuse treatment, parent-teacher conferences, personal improvement, education, work assignments, work release, recreation, and dog training and adoption. On the other hand, Lewis County Jail does not have any education programs, its work release and substance abuse programs are extremely limited, and it lacks recreation activities such as a weight room or a yard for offenders to exercise.

We do not doubt the possible benefits of allowing an individual to serve his combined felony and gross misdemeanor time in DOC. However, we cannot decide this case on what constitutes better policy in the face of the plain language of former RCW 9A.20.021(2). "[A]n unambiguous statute is not subject to judicial construction." *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002). It is within the legislature's purview to amend former RCW 9A.20.021(c)(2), not this court's.

For the foregoing reasons, we adhere to stare decisis and find that the State failed to show that *Besio* is incorrect and harmful. Because *Besio* remains the law, the court did not have authority to sentence Amos to serve his gross misdemeanor time at DOC.

We held in *State v. Linnemeyer* that "'[w]here the law provides a place of imprisonment, the court cannot direct a different place, and if it does so the sentence is void.'" 54 Wn. App. 767, 770, 776 P.2d 151 (1989) (quoting *State v. Christopher*, 20 Wn. App. 755, 763, 583 P.2d 638 (1978)). In a PRP challenging an offender score, the Supreme Court held,

> we adhere to the principles that a sentence in excess of statutory authority is subject to collateral attack, that a sentence is excessive if based upon a miscalculated offender score (miscalculated upward), and that a defendant cannot agree to punishment in excess of that which the Legislature has established. Accordingly, we hold that in general a defendant cannot waive a challenge to a miscalculated offender score. There are limitations on this holding. While waiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion.

*In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002).

As with the offender score in *Goodwin*, sentencing Amos to DOC custody for gross misdemeanors was not authorized by statute. The error in Amos' sentence was a purely legal one. It did not rest on any inaccurate facts to which Amos stipulated. Therefore, under *Goodwin* Amos could not waive his challenge to that illegal sentence. Thus, Amos' challenge to his gross misdemeanor sentences is properly before us through this PRP, and, under *Linnemeyer*, that sentence is void.

If, on the remand ordered above, the trial court dismisses the charges against Amos, it will not be necessary to address these sentencing issues. If charges are not dismissed, then sentencing must be addressed. We may remand to the trial court for resentencing or to correct the erroneous part of the sentence. *See In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33-34, 604 P.2d 1293 (1980); *In re Goodwin*, 146 Wn.2d at 875-78. However, simply correcting Amos' sentence to serve his gross misdemeanors at county jail does nothing to correct the harm from his

counsel's erroneous agreement to his serving time at DOC. With that, the only effective relief for this void sentence is either to allow Amos to withdraw his guilty plea to the misdemeanors, to run the gross misdemeanors concurrently with his felonies, or to remove the gross misdemeanor confinement time. If Amos' charges are not dismissed, then the trial court on remand shall also determine which of these options is appropriate, after hearing argument from counsel.

CONCLUSION

We hold that Amos' PRP was timely. We also hold that a collateral attack waiver is valid, as long as the waiver was made knowingly, voluntarily, and intelligently, and that ineffective assistance of counsel may call those features of the waiver into question. Amos has made a prima facie showing of prejudice on his claim that ineffective assistance of counsel calls into question whether his collateral attack waiver was knowing and voluntary. However, on this record we cannot fully determine whether Amos' waiver in fact was knowing, voluntary, and intelligent or whether the State can show that any ineffective assistance was harmless beyond a reasonable doubt. Thus, we remand this PRP for the trial court to determine the disputed facts necessary to decide the validity of his waiver, as well as to make a determination on the merits of this PRP.

On the sentencing issue, we hold that his sentence of imprisonment in the custody of DOC for his gross misdemeanors was not authorized by statute and thus was void. We remand

to the trial court to determine the proper remedy, consistently with this opinion.

BJØRGEN, C.J.

We concur:

WORSWICK, J.

JOHANSON, J.